UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

KARSANT FAMILY LIMITED,

Plaintiff (s),

v.

ALLSTATE INS CO.,

Defendant(s).

No. **C 08-01490 MEJ**

**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**

IT IS HEREBY ORDERED that this action is assigned to the Honorable Maria-Elena James. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order , the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2.  Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3.  Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov.  A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

### CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|---|---|---|
| 3/18/2008 | Notice of removal filed | |
| 6/5/2008 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file Joint ADR Certification with Stipulation to ADR Process or Notice of Need for ADR Phone Conference | Civil L.R. 16-8 |
| 6/19/2008 | *Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at  http://www.cand.uscourts.gov) | FRCivP 26(a) (1)<br>Civil  L.R . 16-9 |
| 6/26/2008 | INITIAL CASE MANAGEMENT CONFERENCE (CMC)  in Ctrm. B, 15th Floor, SF at 10:00 AM | Civil  L.R.  16-10 |

*  If the Initial Case Management Conference is continued, the other deadlines are continued accordingly.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff(s), | ) | No. C            MEJ |
| | ) | |
| v. | ) | ORDER SETTING |
| | ) | CASE MANAGEMENT |
| | ) | CONFERENCE. |
| Defendant(s). | ) | |
| _____ | ) | [ALL CASES] |

IT IS HEREBY ORDERED that,  pursuant to Fed. R. Civ. P. 16 and Civil L. R. 16-10, a Case Management Conference will be held in this case before the Honorable Maria-Elena James on Thursday, ____ _____ at 10:00 A.M. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102.

IT IS FURTHER ORDERED that, within 120 days of filing the complaint, and in accordance with Fed. R. Civ. P. 4, Plaintiff(s) shall complete service of the complaint on at least one Defendant and file either a waiver of service or a certification of service of process.  Failure to file the waiver of service or a certification of service may result in issuance by the Court of an Order to Show Cause why the complaint should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4.

IT IS FURTHER ORDERED that Counsel shall meet and confer prior to the Case Management Conference and file, no later than seven days before the Case Management Conference, a Joint Case Management Conference Statement in compliance with Civil L. R. 16-9 addressing the information contained in the Joint Case Management Statement and [proposed] Case Management Order form, enclosed herewith. In addition, the parties must be prepared to knowledgeably discuss with the Court any of the other subjects listed in Fed. R. Civ. P. 16 or in Civil L. R. 16-10.

IT IS FURTHER ORDERED that motions for summary judgment shall be accompanied by a joint statement of undisputed facts in compliance with Civil L. R. 56-2(b).

IT IS FURTHER ORDERED that seven days prior to the case management conference, each party shall file the consent/declination form, enclosed herewith, consenting to Judge James' jurisdiction or requesting reassignment to a district court judge.  In the event that Defendant(s) file a Motion to Dismiss, pursuant to

Fed. R. Civ. P. 12, Defendant(s) shall file the consent/request for reassignment form at the time the motion is filed and Plaintiff(s) shall file the consent/request for reassignment form seven days thereafter.

**IT IS FURTHER ORDERED that in all "E-Filing" cases, when filing papers that require the Court to take any action (e.g. motions, meet and confer letters, administrative requests), the parties shall, in addition to filing papers electronically, lodge with chambers a printed copy of the papers by the close of the next court day following the day the papers are filed electronically. These printed copies shall be marked "Chambers Copy" and shall be submitted to the Clerk's Office in an envelope clearly marked "Magistrate Judge Maria-Elena James", case number and "E-Filing Chambers Copy." Parties shall not file a paper copy of any document with the Clerk's Office that has already been filed electronically.**

IT IS FURTHER ORDERED that each attorney of record in all "E-Filing" cases is obligated to become an ECF User as defined in General Order No. 45 and be assigned a user ID and password for access to the system upon designation of the action as being subject to ECF. Registration shall be on a form prescribed by the Clerk. Attorneys of record who fail to register timely shall be subject to such sanctions as may be imposed by the Court.

IT IS FURTHER ORDERED that Plaintiff(s) shall serve copies of this Order, the Joint Case Management Statement and [proposed] Case Management Order form, the consent/request for reassignment form and the attached Discovery and Dispute Procedures on all parties to this action, and on any parties subsequently joined, in accordance with Fed. R. Civ. P. 4 and 5. Following service of process on Defendant(s), Plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Failure to comply with this Order or the Civil Local Rules of this Court may result in   sanctions, including the dismissal of the complaint or the entry of a default. Fed. R. Civ. P. 16(f), Civil  L. R. 1-4.

Date: December 13, 2002                          ____/s/_____

                                                 Maria-Elena James
                                                 United States Magistrate Judge

1
2

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

3
4
5
6
7
8

|  |  |
|---|---|
| Plaintiff(s), | ) ) ) ) |
| vs. | ) ) |
| , | ) ) |
| Defendant(s). | ) ) |

Case No.        MEJ

JOINT CASE MANAGEMENT
STATEMENT AND [PROPOSED]
CASE MANAGEMENT ORDER.

)

9
10
11
12

The parties to the above-entitled action submit this Joint Case Management Statement and Proposed

Case Management Order and request the Court to adopt it as the Case Management Order in this case,

pursuant to Federal Rule of Civil Procedure 16 and Civil L.R.16-10(b).

13

**JOINT CASE MANAGEMENT STATEMENT**

14
15

i.       Description of the case:  (The parties may attach additional pages to this statement.)

16

1.       A brief description of the events underlying the action:

17
18
19
20
21
22

_____  ____
_____  _____
_____  _____
_____  _____
_____  _____
_____

23

2.       The principal factual issues which the parties dispute:

24
25
26
27
28

_____  ____
_____  _____
_____  _____
_____  _____
_____  _____

3

1    _____

2    3.    The principal legal issues which the parties dispute:

3    _____ ____

4    _____ _____

5    _____ _____

6    _____ _____

7    _____ _____

8    _____ _____

9    _____ _____

10   _____

11   4.    Other issues *[e.g. service of process, personal jurisdiction, subject matter jurisdiction or venue]*

12   which remain unresolved for the reason stated below and the parties' proposed resolution:

13   _____ ____

14   _____ _____

15   _____ _____

16   _____ _____

17   _____

18

19   5.    The parties who have not been served and the reasons for said lack of service:

20   _____ ____

21   _____ _____

22   _____ _____

23   _____ _____

24   _____

25   6.    The additional parties whom the below-specified parties intend to join and the intended

26         time frame for such joinder:

27   _____

28

4

B.    Consent to Magistrate Judge for Trial:

1.    The parties consent to assignment of this case to a United States Magistrate Judge for Trial:    ____

Yes    ____    No

The consent/request for reassignment form is attached to the back of this sample joint case management statement and order.  The consent/request for reassignment form was received by Defendant with service of process of the complaint.  **Each party shall file the signed form consenting to Magistrate Judge James' jurisdiction or requesting reassignment to a district court judge no later than the filing deadline for the joint case management statement assigned by the initial case management schedule.**

C.    Alternative Dispute Resolution:

The parties have discussed and request the following court ADR process: Nonbinding Arbitration, Early Neutral Evaluation, Mediation, or Early Settlement *[If Nonbinding Arbitration, Early Neutral Evaluation or Mediation, state the expected or scheduled date for the ADR session]*:

_____

_____

**[PROPOSED] CASE MANAGEMENT ORDER**

*[Counsel shall fill in the stipulated dates for the matters below]*

Pursuant to Fed.R.Civ.P. 16, the Court conducted a case management conference on

5

1    _____ and ORDERS as follows:

2

3    A.    ADR Program:

4    1.    The parties are hereby referred to _____ [*ADR selection above*].

5    2.    The parties shall file their ADR certification by the date assigned by the initial case

6          management schedule received from the Clerk of the Court, pursuant to Civil L.R. 16-8.

7

8    B.    Jury or Court Trial:

9    1.    The parties shall designate in **both their pleadings and joint case management**

10   **statement** whether the trial requested is a jury trial or court trial [*designate one below*]:

11         Plaintiff requests a jury trial            _____

12         Defendant requests a jury trial    _____

13         Plaintiff requests a court trial           _____

14         Defendant requests a court trial          _____

15

16   C.    Pretrial Motions:

17   1.    All pretrial motions shall be filed in accordance with Civil L.R. 7.  A motion shall be noticed pursuant

18         to Civil L.R. 7-2 without calling the Court.  Civil law and motion is heard on Thursday mornings at

19         10:00 a.m.

20

21   D.    Discovery:

22   1.    The parties shall abide by Judge James' standing order regarding discovery and dispute procedures.

23

24

25   E.    Disclosure of Expert Witnesses:

26   1.    Any party wishing to present expert witness testimony with respect to a claim or defense shall serve

27         on all other parties the name, address, qualifications, resume, and a written report which complies with

28         Federal Rule of Civil Procedure  26(a)(2)(B) on or before _____ (210 days before trial).

6

2.  This disclosure must be made with respect to a person who is either (a) specifically retained or specially employed to provide expert testimony pursuant to Federal Rule of Evidence 702 or (b) a regular employee or agent or treating physician who may be called to provide expert opinion testimony.

3.  **A party or counsel has a continuing duty to supplement the disclosure of expert witnesses when required under Federal Rule of Civil Procedure 26(e)(1).**

F.  <u>Rebuttal Expert Witnesses</u>:

1.  If the testimony of the expert is intended solely to contradict or rebut opinion testimony on the same subject matter identified by another party, the party proffering a rebuttal expert shall make the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(B), no later than _____(200 days before the trial).

G.  <u>Limitation on Testimony by Expert Witnesses</u>:

1.  Unless the parties enter into a written stipulation otherwise, upon timely objection, an expert witness shall be precluded from testifying about any actions or opinions not disclosed prior to the expert's deposition.  This is to ensure that all factual material upon which expert opinion may be based and all tests and reports are completed prior to the expert deposition.

2.  Unless application is made prior to the close of expert discovery, each party is limited to calling only one expert witness in each discipline involved in the case.

3.  Any party objecting to the admissibility of the testimony of person disclosed as an expert witness must file a written motion *in limine* to exclude the testimony no later than the deadline set in this order for filing motions *in limine*.

H.  <u>Close of Discovery</u>:

1.  All discovery, including depositions of expert witnesses, must be completed by _____ (185 days before trial).

2.  Pursuant to Federal Rule of Civil Procedure 16(b) and Civil L.R. 26-2, a discovery request or

1    stipulation that calls for responses or depositions after the discovery cut-off date are not enforceable

2    except by order of the Court and upon a showing of good cause.

3    3.    Pursuant to Civil L.R. 26-2, no motions to compel discovery may be filed later than 10 days after the

4    discovery cut-off date.

5

6    I.    <u>Dispositive Motions</u>:

7    1.    Pursuant to Civil L.R. 7-2, all dispositive motions shall be filed, served and noticed by

8    _____ (155 days prior to trial). The parties shall file a joint statement of undisputed facts

9    pursuant to Civil L.R. 56-2(b) when filing a motion for summary judgment or summary adjudication.

10    2.    The Court shall hear dispositive motions on _____ ( 120 prior days to trial, during the

11    Court's Thursday law and motion calendar) at 10:00 a.m. in Courtroom B, 15th Floor of the Federal

12    Building, located at 450 Golden Gate Avenue, San Francisco, California.

13

14    J.    <u>Exchange and filing of Trial Papers</u>:

15    1.    By _____ (60 days before trial) lead counsel who will try the case shall meet and confer

16    with respect to the preparation and content of the joint pretrial conference statement and shall

17    exchange (but not file or lodge) the papers described in paragraph 2 below.

18    2.    By _____ ( 45 days before trial) counsel shall file the papers described in Federal Rule

19    of Civil Procedure 26(a)(3) and a joint pretrial conference statement including the following:

20    (A) Substance of the Action: A brief description of the substance of claims and defenses which remain

21    to be decided.

22    (B) Relief Prayed: A detailed statement of all the relief claimed, particularly itemizing all elements of

23    damages claimed as well as witnesses, documents or other evidentiary material to be presented

24    concerning the amount of damages.

25    (C) Undisputed Facts: A plain and concise statement of all relevant facts not reasonably disputable, as

26    well as which facts parties will stipulate for incorporation into the trial record without the necessity of

27    supporting testimony or exhibits.

28    (D) Disputed Factual Issues: A plain and concise statement of all disputed factual issues which remain

1    to be decided.

2    (E) Agreed Statement: A statement assessing whether all or part of the action may be presented upon

3    an agreed statement of facts.

4    (F) Stipulations: A statement of stipulations requested or proposed for pretrial or trial purposes.

5    (G) Witness list: A list of all witnesses to be called for trial. The parties shall submit a page-length

6    detailed summary of the substance of the proposed testimony of each witness, which shall also specify

7    to which disputed fact the testimony relates and an estimate of the time required for direct and cross

8    examination of each prospective witness.

9    (H) Exhibit list: A list of all exhibits to be offered at trial. The exhibit list shall list each proposed exhibit

10    by its number or alphabetical letter, description and sponsoring witness. All documents shall be

11    authenticated prior to trial.

12    (I) Estimated Time of Trial: An estimate of the number of hours needed for the presentation of each

13    party's case.

14    (J) Settlement: A statement summarizing the status of the parties' settlement negotiations.

15    **No party shall be permitted to offer any witness or exhibit in its case in chief that is    not**

16    **disclosed in its witness or exhibit list without leave of the Court for good cause  shown.**

17    3.    Motions *in limine*:  Counsel are directed to meet and confer to resolve any evidentiary

18    disputes prior to filing  motions *in limine*. Any motions *in limine* shall be filed _____ (45

19    days prior to trial).  Any Opposition to motions *in limine* shall be filed _____ (38 days prior

20    to  trial).  These matters will be deemed submitted on the papers without oral argument, unless the

21    Court orders otherwise.

22    4.    Trial Briefs:  Counsel shall file trial briefs setting forth the applicable legal standard, pursuant to Ninth

23    Circuit authority, all significant disputed issues of law, including foreseeable procedural and evidentiary

24    issues by _____ (30 days prior to trial).

25    5.    Joint Proposed Voir Dire (Jury Trial Only):  Counsel should submit a **joint** set of  requested voir dire

26    to be posed by the Court by _____ (30 days prior to trial).    Any voir dire questions on

27    which counsel cannot agree shall be submitted separately by _____ (30 days prior to trial).

28    Counsel will be allowed brief follow-up voir dire after the Court's questioning.

6.    Joint Proposed Jury Instructions (Jury Trial Only):  Jury instructions § 1.01 through § 2.02 and § 3.01 through § 3.15 from the Manual of Model Civil Jury Instructions for the Ninth Circuit (1998 Edition) will be given absent objection.  Counsel shall submit a **joint** set of additional proposed jury instructions by _____ (30 days prior to trial).  .  The instructions shall be ordered in a logical sequence, together with a table of contents.  Any instruction on which counsel cannot agree shall be marked as "disputed," and shall be included within the jointly submitted instructions and accompanying table of contents, in the place where the party proposing the instruction believes it should be given.  Argument and authority for and against each disputed instruction shall be included as part of the joint submission, on separate sheets directly following the disputed instruction.  The Court prefers that all jury instructions conform to the Manual of Model Civil Jury Instructions for the Ninth Circuit.

If possible, counsel shall deliver to the Courtroom Deputy a copy of their joint proposed jury instructions on a computer disk in WordPerfect format.  The disk label shall include the name of the parties, the case number and be entitled "Proposed Jury Instructions."

At the close of Defendant's case in chief, the Court shall hear oral argument on the disputed jury instructions and will then render its rulings.

7.    Proposed Verdict Forms, Joint or Separate (Jury Trial Only): Counsel shall submit any **joint** proposed verdict forms and shall submit their separate verdict forms by _____ (30 days prior to trial).

Whenever possible, counsel shall deliver to the Courtroom Deputy a copy of their joint proposed verdict forms on a computer disk in WordPerfect.  The disk label shall include the name of the parties, the case number and be entitled "Proposed Verdict Forms."

8.    Proposed Findings of Fact and Conclusions of Law (Court Trial Only):  Counsel shall submit **joint** proposed findings of facts by _____ (30 days prior to trial).    Counsel shall submit separately a copy of their disputed findings of fact and conclusions of law by _____ (30 days prior to trial).

Whenever possible, counsel shall deliver to the Courtroom Deputy a copy of their joint proposed findings of fact on a computer disk in WordPerfect.  The disk label shall include the name of the

10

1    parties, the case number and be entitled "Joint Proposed Findings of Facts."

2

3  K.    Pretrial Conference:

4  1.    On _____ (30 days prior to trial, during the Court's Thursday law and motion calendar

5        is held on Thursdays) the Court shall hold a pretrial conference at 10:00 a.m. in Courtroom B, 15th

6        Floor of the Federal Building, located at 450 Golden Gate Avenue, San Francisco, California.  Lead

7        counsel who will try the case must attend the pretrial conference.  The purpose of the pretrial

8        conference is for the Court to rule on any issues raised in the final pretrial conference statement,

9        motions *in limine*, and to discuss the trial of the case.

10

11  L.    Final Pretrial Conference:

12  1.    On _____ (4 days prior to trial, during the Court's Thursday law and motion calendar)

13        the Court shall hold a final pretrial conference to address any outstanding trial issues.

14

15  M.    Trial Date:

16  1.    The trial shall commence [with jury selection taking place] on _____ (Trial

17        schedule: Monday through Thursday, at 1:30 p.m. to 5:00 p.m.).  The trial shall last _____

18        days.

19  2.    For any documents, including the deposition of a witness testifying at trial, which will be shown

20        presented to a witness **but will not be admitted into evidence,** counsel shall bring the original plus

21        three clean copies of the documents. The original document will be handed to the Court during

22        testimony, and the clean copies of the document will be given to the witness during the examination

23        and to opposing counsel.

24  3.    Counsel shall maintain their own exhibits during trial.  Exhibits are to be premarked with exhibit tags

25        stapled to the upper lefthand corner.  If a photo or chart is being used as an exhibit, the exhibit tag

26        should be placed on the back side of the exhibit.  **The Court will only admit premarked exhibits**

27        **which were listed on the earlier filed exhibit list.**

28              Plaintiff shall mark the exhibits numerically; Defendant shall mark the exhibits alphabetically.

The exhibit markers shall each contain the name and number of the case, the number or alphabetical letter of the exhibit, and blank spaces to accommodate the date admitted and the Deputy Clerk's initials.

4.    On the day of trial, counsel shall bring the original premarked exhibits, a copy of the premarked exhibits for opposing counsel and two binders which contain a copy of each side's premarked exhibits for the Court.  **The premarked exhibit binders are to be designated with label dividers.**  The premarked exhibit binders will be given to the Courtroom Deputy on the morning of the trial.

N.    Jury Selection:

1.     The Jury Commissioner will summon 20 to 25 prospective jurors.  The Courtroom Deputy will select their names at random and seat them in the courtroom in the order in which their names are called.

Voir dire will be asked of sufficient venire persons that eight (or more for a lengthy trial) will remain after all peremptory challenges and an anticipated number of hardship dismissals and cause challenges have been made.

The Court will then take cause challenges, and discuss hardship claims from the individual jurors, at side bar.  The Court will inform the attorneys which hardship claims and cause challenges will be granted, but will not announce those dismissals until the process is completed.  Each attorney may then list in writing up to three peremptory challenges.  The attorneys will review each other's lists and then submit them to the clerk.

Then, from the list of jurors in numerical order, the Court will strike the persons with meritorious hardships, those excused for cause, and those challenged peremptorily.  The Court will then call the first eight people in numerical sequence remaining.  These people will be the jury.  All jurors remaining at the close of the case will deliberate.  There are no alternates.

O.    Sanctions:

Failure to comply with this Order is cause for sanctions under Federal Rule of Civil Procedure 16(f).

12

P.    Transcripts:

      Counsel who wants to receive a daily transcript shall contact Robert Stuart, Supervisor Court Reporting Services, at (415) 522-2079, at least ten days in advance of the trial date.

      If any video or tape recording equipment or demonstrative devices will be used, a signed order will need to be obtained at least ten days in advance of the trial date for the items to clear security.

Q.    Questions:

      All questions regarding these instructions should be directed to Brenda Tolbert, Courtroom Deputy Clerk to Judge James, at (415) 522-4708.

Date: _____    Plaintiff's Counsel    _____
                                                    Signature

                           Plaintiff's Counsel    _____
                                                  Printed Name

Date: _____    Defendant's Counsel    _____
                                Signature

                           Defendant's Counsel    _____
                                                  Printed Name

IT IS SO ORDERED.

Date: _____    _____
                                        Maria-Elena James
                                        United States Magistrate Judge

**NOTICE OF TRIAL ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE AND
ORDER TO FILE CONSENT/REQUEST FOR REASSIGNMENT FORM**

This civil case was randomly assigned to United States Magistrate Judge Maria-Elena James for all purposes including trial.  In accordance with Title 28, U.S.C. § 636(c), the Magistrate Judges of this District Court are designated to conduct any and all proceedings in a civil case, including a jury or non-jury trial, and to order the entry of final judgment, upon the consent of the parties.  An appeal from a judgment entered by Magistrate Judge James may be taken directly to the United States Court of Appeals for the Ninth Circuit in the same manner as an appeal from any other judgment of a district court.

You have the right to have your case assigned to a United States District Judge for trial and disposition.  Attached is the form which allows you to either consent to, or decline Judge James' jurisdiction and request reassignment to a District Judge.

Each party shall sign and file the consent/declination form, either consenting to Judge James' jurisdiction, or requesting reassignment to a District Judge, no later than the filing deadline for the joint case management statement assigned by the initial case management schedule.

IT IS SO ORDERED.

Date:    December 13, 2002

_____

Maria-Elena James
United States Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANDING ORDER RE:    DISCOVERY AND DISPUTE PROCEDURES FOR CASES
ASSIGNED OR REFERRED TO MAGISTRATE JUDGE MARIA-ELENA JAMES

_____

In ALL CASES, except those categories of cases listed in Fed.R.Civ.P. 26(a)(1)(E),

assigned to Magistrate Judge Maria Elena James for trial or referred to Magistrate Judge Maria-Elena

James for purposes of discovery, the parties shall follow the following procedures:

Discovery & Disclosure Dispute Procedures:

The Discovery and Disclosure Dispute Procedures inform a *pro se* party or counsel of the

specific procedures required by Judge James before filing a formal discovery motion, pursuant to Civil

L. R. 7, or when requesting a telephonic discovery conference, pursuant to Paragraphs 4 or 5 below.

Counsel and *pro se* parties are required to follow the Discovery and Disclosure Dispute Procedures

herein to resolve all discovery and disclosure disputes.

1.    Parties (or counsel) shall propound disclosures and discovery in accordance with the Fed. R.

Civ. P. 26, 30, 31, 32, 33, 34, 35 and 36 and the Civil L. R. 26, 30, 33, 34 and 36.  All requests for

protective orders must comply with Civil L. R. 79-5.  A copy of the Civil Local Rules for the

Northern District of California is available at the Office of the Clerk of the Court or are available for

public viewing at the Court's internet site - http://www.cand.uscourts.gov.  Pursuant to Fed. R. Civ.

P. 30(a)(2), no more than ten depositions may be taken except by order of the Court.   Pursuant to

Fed. R. Civ. P. 33(a) and Civil L.R. 33-3, no more than 25 interrogatories shall be propounded

except pursuant to stipulation or order of the Court.

2.    The parties shall meet and confer regarding their initial disclosures pursuant to Fed. R. Civ. P.

26(f) and shall make disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(E).  The parties shall

supplement their initial disclosures when required under Fed. R. Civ. P. 26(e)(1).

3.    Civil law and motion is heard on Thursday mornings at 10:00 a.m.  Motions to compel may

be noticed pursuant to Civil L. R. 7-2, without calling the Court.  However, before the Court will

15

consider a motion to compel a **joint** meet and conferral letter must be filed, as described in paragraph 4 below.

4.        Prior to filing any discovery motion under Civil L. R. 7, or before requesting a telephonic discovery conference, counsel must meet and confer **in person** for the purpose of resolving all disclosure and/or discovery disputes.  Thereafter, counsel shall draft and file a jointly signed letter which (1) attests that prior to filing the motion to compel the parties met and conferred **in person** on the unresolved discovery dispute; (2) sets forth the unresolved discovery dispute; and (3) states each party's position as supported by statutory and/or case law.  Said joint letter shall be signed by both parties, shall be limited to five pages and may not be accompanied by exhibits or affidavits other than exact copies of disputed interrogatories, requests for production of documents and/or responses.

5.        Generally, the Court will not consider a motion to compel.  Instead, the parties shall file a joint meet and confer letter.  In the event that counsel was unable to meet and confer with opposing counsel and/or party as directed above, counsel shall request in writing a telephonic discovery conference for the purpose of enforcing the Court's requirement to meet and confer or for the Court to fashion an alternative procedure which satisfies the meet and confer requirement.  Counsel's written request shall state (1) three agreed upon prospective times and dates for the telephonic discovery conference to take place, (2) the anticipated length of the telephonic discovery conference, and (3) the phone numbers at which counsel shall be contacted on the day of the telephonic discovery conference.  A copy of the written request shall be served on opposing counsel and/or party and verification of said service shall be submitted to the Court.  Additionally, counsel shall file a declaration which states the attempt and reasons for the failure to meet and confer.  Counsel may attach exhibits to support the declaration, but the declaration and exhibits combined may not exceed seven pages. The Court will not excuse a party from the requisite meet and conferral unless good cause is shown.  Counsel's refusal to meet and confer without good cause shown will result in sanctions, pursuant to Fed. R. Civ. P. 16(f) and Civil L. R. 37-3.

6.        **In all "E-Filing" cases, when filing papers that require the Court to take any action (e.g. motions, meet and confer letters, administrative requests), the parties shall, in addition to filing papers electronically, lodge with chambers a printed copy of the papers by the close**

**of the next court day following the day the papers are filed electronically.  These printed copies shall be marked "Chambers Copy" and shall be submitted to the Clerk's Office in an envelope clearly marked "Magistrate Judge Maria-Elena James", case number and "E-Filing Chambers Copy."  Parties shall not file a paper copy of any document with the Clerk's Office that has already been filed electronically.**

7.      Pursuant to Civil L. R. 37-1(b), in lieu of filing a formal motion, discovery conferences may be conducted telephonically.  Parties shall request a telephonic discovery conference in writing which shall include (1) the joint meet and confer letter, as set forth above, (2) three agreed upon prospective times and dates for the telephonic discovery conference to take place, (3) the anticipated length of the telephonic discovery conference, and (4) the telephone numbers at which the parties shall be contacted on the day of the telephonic discovery conference.  A copy of the written request shall be served on the opposing party or counsel and verification of said service shall be submitted to the Court.

        The parties shall not telephone the Court to arrange a telephonic discovery conference without first sending the Court a written request for the telephonic discovery conference. The Court will not consider a written request for a telephonic discovery conference which is not accompanied by said joint meet and confer letter.

        Upon approval, the Court shall contact the parties to inform them of the time and date of the telephonic discovery conference. Unless excused for good cause, the party requesting the telephonic discovery conference shall arrange the conference call on the date and time ordered by the Court.

8.      In the event that the parties are participating in a deposition or a site inspection and a discovery dispute arises regarding the deposition and/or site inspection, the parties may contact Judge James' Courtroom Deputy, Brenda Tolbert, at 415-522-4708, to inquire whether Judge James' is available to resolve the parties' impending dispute telephonically.  In the event that Judge James is not available or the parties are unable to contact Judge James' Courtroom Deputy for any reason, the parties shall follow the procedures set forth in paragraph 6 above.

9.      In the event that a matter is to be taken off calender, or continued to a further date, a written stipulation signed by the parties shall be submitted to the Court for approval; said stipulation must be

received by the Court at least five business days prior to the scheduled hearing date.

10.     Other than scheduling matters, pursuant to Civil L. R. 11-4(c), a party shall not contact the Court *ex parte* without prior notice to opposing party.  All communications or questions to the Court shall be presented to the Court in writing.  Parties must certify to the Court that all parties were faxed or mailed a copy of the written communication. Unless expressly requested by the Court, documents should not be faxed to chambers but should be filed or lodged in accordance with the Local Rules of Court.

11.     Parties shall not mail or fax to the Court copies of correspondence from a party regarding any dispute pending before the Court.

12.     Parties have a continuing duty to supplement the initial disclosures when required under Fed. R. Civ. P. 26(e)(1).

13.     Motions for sanctions shall be filed separately, pursuant to Fed. R. Civ. P. 37 and Civil L. R. 37-3.  Any party seeking an award of attorney's fees or other expenses in connection with a motion shall file a declaration with the opposition or reply memorandum which itemizes with particularity the fees and expenses claimed.

The failure of a party to abide by Judge James' Discovery and Disclosure Dispute Procedures may result in sanctions, pursuant to Fed. R. Civ. P. 16(f).

IT IS SO ORDERED.

DATED: December 13, 2002

_____
MARIA-ELENA JAMES
United States Magistrate Judge

18

**STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA**

**CONTENTS OF JOINT CASE MANAGEMENT STATEMENT**

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.      Jurisdiction and Service:  The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.      Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.      Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.      Motions: All prior and pending motions, their current status, and any anticipated motions.

5.      Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.      Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.      Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.      Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.      Class Actions: If a class action, a proposal for how and when the class will be certified.

10.      Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.      Relief: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated.  In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.    <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.    <u>Consent to Magistrate Judge For All Purposes</u>: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.    <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.    <u>Expedited Schedule</u>: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.    <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.    <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.    <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.  **In addition**, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either:  (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.    Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

,                                                    No. C          MEJ

        Plaintiff,                                   CONSENT TO ASSIGNMENT OR
                                                     REQUEST FOR REASSIGNMENT.
    vs.

,

        Defendant.
_____/

### CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 18 U.S.C. Section 636(c), the undersigned party hereby consents to have United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment, and voluntarily waives the right to proceed before a United States District Judge.


Dated:_____          _____
                                        Signature

                                        Counsel for _____



### REQUEST FOR REASSIGNMENT TO A UNITED STATES DISTRICT JUDGE FOR TRIAL AND DISPOSITION

The undersigned party hereby declines to consent to the assignment of this case to a United States Magistrate Judge for trial and disposition and hereby requests the reassignment of this case to a United States District Judge.


Dated:_____          _____
                                        Signature

                                        Counsel for _____

United States District Court

For the Northern District of California

1   MICHAEL BARNES (State Bar No. 121314)
    SONIA MARTIN (State Bar No. 191148)
2   MICHELLE TRUDELLE (State Bar No. 221323)
    SONNENSCHEIN NATH & ROSENTHAL LLP
3   2121 N. California Blvd., Suite 800
    Walnut Creek, California 94596
4   Telephone: (925) 949-2600
    Facsimile: (925) 949-2610
5
    Attorneys for Defendant   E-filing
6   ALLSTATE INSURANCE COMPANY

**FILED**

MAR **1 8** 2008

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO/OAKLAND DIVISION

*MEJ*

11

12   KARSANT FAMILY LIMITED              No. **CV 08    1490**
     PARTNERSHIP and DR. PETER
13   KARSANT,                            NOTICE OF REMOVAL OF A CIVIL
                                         ACTION
14             Plaintiffs,

15        vs.

16   ALLSTATE INSURANCE COMPANY,

17             Defendant.

18

19

20        TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

21   NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR

22   ATTORNEYS OF RECORD:

23        PLEASE TAKE NOTICE that pursuant to 28 U.S.C. section 1441(a), defendant Allstate

24   Insurance Company hereby removes to this Court the action described herein and respectfully

25   submits the following statement of grounds for removal:

26                        THE SUPERIOR COURT ACTION

27        1.    On February 7, 2008, an action was commenced in the Superior Court of the State

28   of California for the City and County of San Francisco, entitled "*Karsant, et al., v. Allstate*

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

Case No. _____              -1-              NOTICE OF REMOVAL

1  *Insurance Company*," Case No. CGC 08-471940 (the "Superior Court Action").

2        2.    In the Superior Court Action, plaintiffs seek damages on account of Allstate's

3  alleged denial of coverage and alleged delay and/or failure to pay all defense costs for a third

4  party liability claim.  (Complaint ("Compl."), ¶ 17.)  Specifically, plaintiffs contend their

5  commercial tenants demanded arbitration and filed litigation against plaintiffs concerning a

6  disputed lease agreement.  (Compl. ¶ 4.)  Both the arbitration and litigation were tendered to

7  Allstate for defense and indemnity.  (*Id.* at ¶ 5.)

8        3.    Allstate allegedly insured plaintiffs on the date of loss under a Business Insurance

9  Policy (the "Policy").  (Compl., ¶ 3.)  When plaintiffs tendered the claims, Allstate allegedly

10  denied coverage and refused to defend the claims.  (*Id.*)  As a result, plaintiffs allege they were

11  forced to retain counsel and defend the claims on their own, and were forced to sell stock and

12  mortgage property to fund the defense costs and the resulting arbitration award.  (*Id.* at ¶¶ 5, 7.)

13  When Allstate agreed to pay for the defense costs of the arbitration and litigation, plaintiffs

14  assert, Allstate delayed in its payments, failed to pay all defense costs, and refused to cover the

15  arbitration award.  (*Id.* at ¶ 8, 11, 12, 13.)  Seeking unreimbursed defense costs, covered portions

16  of the arbitration award, lost investment gains, interest costs on mortgage, attorneys' fees and

17  costs, physical and emotional distress damages, punitive damages and costs of suit, plaintiffs sue

18  Allstate for "breach of contract and bad faith."

19                                   SERVICE

20        4.    Allstate is informed and believes that the Summons and Complaint in the Superior

21  Court Action were served on Allstate on or about February 20, 2008 by means of an

22  acknowledgement of service executed that date.  Attached hereto as Exhibit A are true and

23  correct copies of the Summons, Complaint, Answer, ADR papers and Notice of Related Case,

24  which Allstate believes constitute all pleadings on file in the Superior Court Action.

25                                 JURISDICTION

26        5.    Plaintiffs were, at the time of filing of the Superior Court Action, now are, and at

27  all relevant times have been, citizens and residents of the State of California.  Defendant Allstate

28  was, at the time of filing of the Superior Court Action, now is, and at all relevant times has been,

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1    a corporation organized and existing under the laws of the State of Illinois, with its principal

2    places of business in the city of Northbrook, Illinois.

3        6.    Plaintiffs and Allstate, accordingly, are citizens and residents of different states.

4                        AMOUNT IN CONTROVERSY

5        7.    Plaintiffs have sued Allstate for breach of contract and bad faith. The breach of

6    contract cause of action asserts that "Plaintiffs have suffered damages in the amount of

7    unreimbursed defense costs and in the amount of the covered portions of the arbitration award,

8    currently in excess of $175,000."

9        8.    In addition, plaintiffs seek additional sums to compensate them for "physical and

10   emotional distress damages" allegedly resulting from "bad faith" on Allstate's part. (Compl., ¶

11   23.) The Complaint also seeks attorneys' fees, costs and interest. (*Id.*, Prayer for Relief, at ¶ 3.)

12   Attorneys' fees incurred to compel payment of insurance policy benefits withheld in bad faith

13   are also recoverable as damages, and are also part of the amount in controversy. *Brandt v.*

14   *Superior Court*, 37 Cal. 3d 813, 815 (1985). Finally, the Complaint seeks punitive damages,

15   which also are included in determining whether the amount in controversy requirement has been

16   met. *Bell v. Preferred Life Society*, 320 U.S. 238, 239 (1943). Accordingly, plaintiffs seek to

17   recover damages in excess of seventy-five thousand dollars ($75,000).

18       9.    The Superior Court Action is a civil action of which this Court has original

19   jurisdiction under 28 U.S.C. section 1332, in that plaintiffs and Allstate are citizens of different

20   states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

21       10.    The case is therefore one that Allstate may remove to this Court pursuant to 28

22   U.S.C. sections 1441 and 1446. The removal is effected less than thirty days after service of the

23   Complaint in the Superior Court Action, in accordance with 28 U.S.C. section 1446(b).

24

25

26

27

28

Case No. _____                    -3-                    NOTICE OF REMOVAL

1    Dated: March 7, 2008                              SONNENSCHEIN NATH & ROSENTHAL LLP

2

3

4                                                      By    MATudelle

5                                                            MICHELLE TRUDELLE

6                                                      Attorneys for Defendant
                                                       ALLSTATE INSURANCE COMPANY
7        27291818

8

9

10

11

12

13

14

15

16

17

18

19

20                                                                                          .

21

22

23

24

25

26

27

28

Case No. _____            -4-                        NOTICE OF REMOVAL



Complaint and

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Allstate Insurance Company

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Karsant Family Limited Partnership and Dr. Peter
Karsant

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.   Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.   Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.   Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.   Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of the State of California
400 McAllister Street
4th Floor
San Francisco, CA 94102

**CASE NUMBER**
*(Número del Caso):* **08--471940**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dennis M. Cusack                                            415-954-4480
Farella Braun + Martel LLP
235 Montgomery Street
San Francisco, CA 94104

GORDON PARK-LI

DATE:                                 Clerk, by CRISTINA E. BAUTISTA                    , Deputy
*(Fecha)*                             *(Secretario)*                                        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Allstate Insurance Company

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, Sta.. Jar number, and address): | FOR COURT USE ONLY |
|---|---|
| Dennis M. Cusack<br>Farella Braun + Martel LLP<br>235 Montgomery Street<br>18th Floor<br>San Francisc, CA 94104<br>TELEPHONE NO.: 415-954-4400    FAX NO.: 415-954-4480<br>ATTORNEY FOR (Name): Plaintiffs | ENDORSED<br>F I L E D<br>San Francisco County Superior Court<br><br>FEB 7 2008<br><br>GORDON PARK-LI, Clerk<br>BY: CRISTINA E. BAUTISTA<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street, 4th Floor
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: San Francisco

CASE NAME: Karsant v. Allstate Ins. Co.

| CIVIL CASE COVER SHEET<br>[X] Unlimited      [ ] Limited<br>(Amount              (Amount<br>demanded          demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>CGC08- 471940<br>JUDGE:<br>DEPT: |
|---|---|---|

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action (specify): 2 - Breach of Contract and Bad Faith

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 7, 2008

Dennis M. Cusack
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

1  Dennis M. Cusack (SBN #124988)
   Farella Braun & Martel LLP
2  235 Montgomery Street, 17th Floor
   San Francisco, CA 94104
3  Telephone: (415) 954-4400
   Facsimile: (415) 954-4480
4
   Attorneys for Plaintiffs
5  Karsant Family Limited Partnership and Dr. Peter
   Karsant
6
7
8                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     IN AND FOR THE COUNTY OF SAN FRANCISCO

10

11  Karsant Family Limited Partnership and        Case No. CGC08-471940
    Dr. Peter Karsant,
12                                                 COMPLAINT FOR BREACH OF
                    Plaintiffs,                    CONTRACT AND BAD FAITH
13
          vs.
14
    Allstate Insurance Company,
15
                    Defendant.
16

17
                              **THE PARTIES**
18
        1.   Plaintiff Karsant Family Limited Partnership ("the Partnership") is a partnership
19
    organized and operating under the laws of the State of California, with its principal place of
20
    business in San Francisco. Plaintiff Dr. Peter Karsant ("Dr. Karsant") is an individual living in
21
    the San Francisco, California, and is the managing partner of the Partnership. The Partnership
22
    and Dr. Karsant are collectively "the Plaintiffs."
23
        2.   Defendant Allstate Insurance Company ("Allstate") is an insurance company with its
24
    principal place of business in Illinois. Allstate sells insurance policies to customers in California
25
    and conducts operations in California.
26
                          **GENERAL ALLEGATIONS**
27
        3.   The Partnership owns a building located on Ocean Avenue in San Francisco ("the
28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

19582\1413703.1

1   Property"). Allstate issued an insurance policy (# 050 251516) to the Partnership providing

2   property and general liability coverage for, among other things, the Property. The policy had

3   been renewed for successive annual periods including the period from December 1, 2003 to

4   December 1, 2004. The policy covers, among other things, liability for "wrongful eviction from,

5   wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises

6   that a person occupies, by or on behalf of its owner, landlord or lessor." A copy of the policy as

7   attached as Exhibit A.

8       4. One of the tenants at the Property is a restaurant owned and operated by Nicholas and

9   Ekaterine Panoutsopoulos ("the Tenants"). In January 2004, the Tenants demanded arbitration of

10   disputes between them and the Partnership arising out of the lease. The Tenants contended that

11   the Partnership, through Dr. Karsant, had interfered with their quiet enjoyment of the leased

12   premises. In May 2004, the Tenants filed a separate lawsuit in San Francisco Superior Court

13   against Dr. Karsant individually, setting out the same allegations.

14       5. The Partnership and Dr. Karsant tendered the claims to Allstate. Without any

15   investigation, in August 2004 Allstate denied coverage and refused to defend the claims. As a

16   result, the Partnership and Dr. Karsant were left to hire counsel and defend the claims on their

17   own. One consequence of Allstate's refusal to defend was that in September 2004, the

18   Partnership was forced to sell stock to fund the defense costs. Had it not been forced to sell the

19   stock, the Partnership would have earned gains on the investments.

20       6. The arbitration went forward in November 2004. Without the support of Allstate,

21   Plaintiffs were forced to make decisions during the course of the arbitration proceeding that

22   contributed to the adverse result. Specifically, Plaintiffs believed they were constrained by lack

23   of resources to continue the arbitration with the chosen arbitrator (because stopping the

24   arbitration, mounting a challenge, and then restarting the arbitration would have been

25   prohibitively expensive) despite evidence that he was unfairly biased against Plaintiffs. In an

26   interim ruling award dated December 23, 2004, the arbitrator ruled in favor of the Tenants and

27   against the Partnership. A final award against the Partnership was issued on March 24, 2005.

28       7. In January 2005, the Partnership was forced to mortgage the Property in order to obtain

1  funds to both pay the arbitration award and to pay the defense costs incurred in defending the
2  arbitration.

3      8.  On March 7, 2005, the Partnership and Dr. Karsant demanded that Allstate pay the
4  defense costs incurred in connection with the arbitration.  Despite its clear obligation to defend
5  the arbitration, and its unquestioned breach of that obligation, Allstate delayed for nine months
6  before finally agreeing to pay the defense costs that the Partnership had already incurred and paid.
7  Allstate also agreed to pay the ongoing defense costs to defend Dr. Karsant against the Superior
8  Court action.

9      9.  In the meantime, the Tenants sought to move forward with their Superior Court action
10  against Dr. Karsant individually. The Tenants then attempted to amend their complaint to add as
11  defendants the attorneys who had represented the Partnership and Dr. Karsant before and during
12  the arbitration.  On March 2, 2006, the trial court granted the motion to add the Partnership's and
13  Dr. Karsant's attorneys to the action.  As a result, Dr. Karsant was forced to find new counsel to
14  represent him in the Superior Court action.

15     10. Dr. Karsant immediately notified Allstate of the need to find new counsel and requested
16  Allstate's recommendations.  Dr. Karsant also urged Allstate to act quickly to protect Dr. Karsant.
17  Despite providing Allstate with information on choices for new counsel, Allstate did not respond.
18  Before the end of March 2006, Dr. Karsant told Allstate that he would select defense counsel on
19  his own if he did not hear from Allstate by the end of March.  Allstate did not respond; therefore,
20  Dr. Karsant retained new counsel on his own.

21     11. Despite repeated efforts to get Allstate's attention, Allstate did not respond again until
22  August 2006.  At that time, over two years since the matter was first tendered to Allstate, it issued
23  its first reservation of rights letter agreeing to defend Dr. Karsant.  Still, despite its complete
24  abandonment of Dr. Karsant while he was choosing new defense counsel, Allstate asserted a right
25  to limit what it would pay Dr. Karsant's new counsel.

26     12. Furthermore, Allstate continued its pattern and practice of delay in paying defense costs
27  incurred.  Despite repeated promises to defend Dr. Karsant, it did not pay the remaining invoices
28  of Dr. Karsant's prior counsel (incurred through March 2006) until January 2007.  Allstate has

1   continued to delay paying the invoices of Dr. Karsant's new counsel, and has refused to pay them

2   in full.

3     13. Despite a demand, Allstate has also refused to pay the covered portions of the arbitration

4   award.

5                               **FIRST CAUSE OF ACTION**

6                                 **(Breach of Contract)**

7     14. Plaintiffs incorporate by reference the allegations of paragraphs 1 to 13.

8     15. Plaintiffs have performed all obligations required of them under the Allstate policy.

9     16. Under the Allstate policy, Allstate had and continues to have an obligation to defend

10   Plaintiffs against claims, including arbitration demands and lawsuits, alleging damages

11   potentially covered by the Allstate policy. Allstate also owes a duty to pay covered arbitration

12   awards and court judgments.

13     17. Allstate has breached its obligations under the policy by, among other things, denying

14   coverage for the arbitration; delaying payment of incurred defense costs in both the arbitration

15   and the Superior Court action even after acknowledging its obligation to defend Plaintiffs;

16   refusing to pay covered portions of the arbitration award; abandoning Dr. Karsant in March 2006

17   when he was required to find new defense counsel to defend the Superior Court action; and

18   failing to pay all defense costs incurred in connection with defense of the Superior Court Action.

19     18. As a direct and proximate result of Allstate's breaches of contract, Plaintiffs have suffered

20   damages in the amount of unreimbursed defense costs and the amount of the covered portions of

21   the arbitration award, currently in excess of $175,000.

22                           **SECOND CAUSE OF ACTION**

23                                   **(Bad Faith)**

24     19. Plaintiffs incorporate by reference the allegations of paragraphs 1 to 18.

25     20. Allstate's policy contains an implied covenant of good faith and fair dealing, under which

26   Allstate agrees not to do anything that would deprive Plaintiffs of their rights under the policy.

27     21. Allstate has breached the implied covenant by, among other things, unreasonably failing

28   to investigate the potential for covered damages before denying coverage for the arbitration;

1    unreasonably and without cause denying any obligation to defend the arbitration; unreasonably

2    delaying payment of defense costs incurred even after acknowledging its obligation to defend the

3    arbitration and the Superior Court action; unreasonably failing to pay the covered portions of the

4    arbitration award; abandoning Dr. Karsant in March 2006 when he needed to find new defense

5    counsel to defend him in the Superior Court action; unreasonably asserting a right to limit the

6    rates it pays Dr. Karsant's new counsel, whom Dr. Karsant selected after Allstate abandoned him;

7    and unreasonably and without cause failing to pay all of the defense costs incurred by Dr. Karsant

8    in the Superior Court action.

9        22. As a direct and proximate result of Allstate's breaches of the implied covenant, Plaintiffs

10    have suffered damages, including but not limited to, the unreimbursed defense costs in the

11    Superior Court action; the covered portions of the adverse arbitration award; the lost gains on the

12    stock the Partnership was forced to sell to partially fund the defense of the arbitration; and the

13    interest costs on the mortgage on the Property obtained to fund the defense costs and arbitration

14    award. Plaintiffs have also been damaged in an amount equal to the attorneys' fees and costs

15    Plaintiffs have had to incur to enforce their contractual rights under the policy.

16        23. As a further direct and proximate result of Allstate's breaches of the implied covenant, Dr.

17    Karsant has suffered severe physical and emotional distress.

18        24. Plaintiffs are further informed and believe, and thereon allege, that Allstate has acted

19    pursuant to a practice and policy of avoiding its defense obligations regardless of the specific

20    facts of the particular case, and delaying payments it agrees it owes, in an effort to save itself

21    money and compel its insureds to relinquish the benefits due them under their policies. Plaintiffs

22    are further informed and believe that Allstate has acted with oppression, fraud and/or malice,

23    entitling Plaintiffs to an award of punitive damages.

24                                    **PRAYER FOR RELIEF**

25        Wherefore, Plaintiffs pray for relief as follows:

26        1.  On the First Cause of Action, for all unreimbursed defense costs incurred and to be

27    incurred by Dr. Karsant in the Superior Court action, and for the covered portions of the

28    arbitration award;

1    2.  On the Second Cause of Action, for all unreimbursed defense costs incurred and to be

2    incurred by Dr. Karsant in the Superior Court action, for the covered portions of the arbitration

3    award, for the lost investment gains on the stock sold to partially fund the defense of the

4    arbitration, for the interest costs on the mortgage, for attorneys fees and costs incurred in

5    enforcing Plaintiffs' rights under the policy, for damages for Dr. Karsant's physical and

6    emotional distress, and for punitive damages;

7    3.  For costs of suit and attorneys' fees; and

8    4.  For such other and further relief as the court deems just and proper.

9

10   Dated: February 7, 2007                          FARELLA BRAUN & MARTEL LLP

11

12                                              By:

13                                                   Dennis M. Cusack

14                                                   Attorneys for Plaintiffs
                                                     Karsant Family Limited Partnership and
15                                                   Dr. Peter Karsant

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT
# A

**Allstate.**
You're in good hands.

SPECIAL FORM CUSTOMIZER POLICY NO. 050  251516

ALLSTATE INSURANCE COMPANY
CALIFORNIA REGIONAL COMMERCIAL CENTER
P O BOX 6509
DIAMOND BAR CA 91765-8509

Insured Name:    KARSANT FAMILY LIMITED PARTNERSHIP
                 C/O MARY KARSANT SR TRUSTEE
Address:         230 CASITAS AVE
                 SAN FRANCISCO CA 94132

"The undersigned certifies that this is a true and correct copy of the
(policy) (renewal certificate) of the policy number noted hereon, which
policy conforms to the policy on file with the director."

Signature... _Mary E. Fonseca_

Insured Copy ( Mailing Sheet )

BU114-2

**Allstate.**
You're in good hands.

ALLSTATE INSURANCE COMPANY

DECLARATIONS

SPECIAL FORM CUSTOMIZER POLICY NO. 050 251516  CP

1. The Insured          KARSANT FAMILY LIMITED PARTNERSHIP
                        C/O MARY KARSANT SR TRUSTEE
   Mailing Address      230 CASITAS AVE
                        SAN FRANCISCO CA 94132


   LOCATION OF INSURED PREMISES: ( SEE BU5575-3 )


2. Policy Period from    12/01/03        to    12/01/04

     Beginning and ending 12:01 A.M. , Standard Time at the address of the insured stated above.


3. The Insured is an Individual


4. ADDITIONAL INTERESTS
     This policy also covers the interests of any of the following when indicated by an "X" and named below.

         ___ The Mortgagee under         ___ The Loss Payee under          ___ Other
             Coverage A - Part One            Coverage A - Part Two

         ___ The Additional Insured       ___ The Vendor under
             for Leased Premises,             Coverage B - Part One
             under Coverage B - Part One


         Name        THERE ARE NO ADDITIONAL INTERESTS ON THIS POLICY
         Address


5. POLICY COVERAGES
     This policy applies to each of the Coverages and Parts shown below. Under Coverage A, Coverage is provided only for
     property at the Insured Premises for which a specific limit of liability is shown.

---

COVERAGE A - Business Property

| Part | | Limits of Liability |
|---|---|---|
| One | Buildings  REPLACEMENT COST | $  SEE BU5575-3 |
| | The Property Insurance Adjustment Condition ___IS___ applicable to this policy | |
| Two | Business Contents | $ |
| | DEDUCTIBLE  $ 250    Applicable to each adjusted loss | |

---

COVERAGE B - Business Liability

| Part | | | Limits of Liability |
|---|---|---|---|
| One | Comprehensive Liability | | $ 2,000,000 EACH ACCIDENTAL EVENT |
| | Fire and Specified Peril Legal Liability | | $ 50,000 EACH ACCIDENTAL EVENT |
| | Advertising Injury Liability | | $ 100,000 |
| Two | Medical Payments | | $  5,000  EACH PERSON $ 25,000  EACH ACCIDENT |

---

BU5570-4

BU114-2



ALLSTATE INSURANCE COMPANY

DECLARATIONS

SPECIAL FORM CUSTOMIZER POLICY NO. 050 251516 CP

6. Optional Coverages
    The following optional coverages, if any, are provided under this policy.

| Coverage | Location | Limits of Liability |
|----------|----------|---------------------|
| BROAD HEATING & AIR CONDITIONING COVERAGE | 001 | SEE COVERAGE A - PART TEN |
| EXTERIOR SIGNS | 001 | $5,000 |
| LOSS OF INCOME - RENTS | 001,002 | SEE COVERAGE A - PART THREE |
| WATER DAMAGE | 001,002 | SAME AS COVERAGE A |
|  |  |  |

7. Annual Premium for the Policy and Optional Coverages    $   8,426.00

8. Endorsements: The following endorsements amend this policy.

| BU5550A | BU5575-3 | BU4258-1 | BU5559-2 | BU5583-1 | BU5620A | BU5651-6 | BU5754 | BU5756 | BU5766 |
|---------|----------|----------|----------|----------|---------|----------|--------|--------|--------|

IMPORTANT NOTICE TO FLORIDA POLICYHOLDERS: For inquiries, to obtain coverage information and to receive
assistance in resolving complaints, call (800)-729-3005 .

Countersigned by    JILL CHANG                                Authorized Agent

BU5570-4

BU114-2

**Allstate.**
You're in good hands.

SPECIAL FORM CUSTOMIZER POLICY NO. 050 251516 CP

SUPPLEMENTAL DECLARATIONS

5. Under Coverage A, insurance is provided only for property at the Insured Premises for which a specific limit of liability is shown.

Part One - Buildings

| Loc. No. | Bldg. No. | Insured Premises | RC or ACV * | Limits of Liability |
|----------|-----------|------------------|-------------|---------------------|
| 001 | 001 | 2529-2533 OCEAN AVE AND 100 EUCALYPUS DR<br>SAN FRANCISCO            CA  94132<br>MASONRY          OFFICE BUILDING | RC | $  1,147,000 |
| 002 | 001 | 2555 OCEAN AVE<br>SAN FRANCISCO            CA  94132<br>MASONRY          OFFICE BUILDING | RC | $    895,000 |

* Valuation  -  RC = Replacement Cost;   ACV = Actual Cash Value

BU5575-3

Page B-1

BU114-2

## CALIFORNIA CHANGES—SELECTION OF INDEPENDENT COUNSEL

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under this policy.

When this policy requires us to defend a legal action against you, the following conditions apply:

1. When a conflict of interest exists between you and us, we shall provide independent counsel you select to represent you, unless you waive, in writing, your right to such counsel.

2. If you do not waive your right as stated in No. 1 above, and you wish to select independent counsel, you will select three (3) or more such independent counsel from which we will choose one. Such independent counsel must meet the following qualifications:

   a. Independent counsel must have at least five (5) years of civil litigation practice which must include substantial defense experience in the subject at issue in the litigation;

   b. Independent counsel must carry insurance against errors and omissions in the amount of at least $1,000,000 and must provide proof of such insurance upon our request; and

   c. Independent counsel must be of good repute, good standing in the community and licensed to appear and practice before the court in which litigation is brought.

3. Work performed by independent counsel shall be reasonable and necessary to your defense in the litigation brought.

4. Our obligation to pay fees to such independent counsel selected by you is limited to the rates which are actually paid by us to attorneys retained by us in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended, whichever would be less.

5. Any dispute concerning attorney's fees shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute. If the parties are unable to agree, an arbitrator will be selected by the American Arbitration Association. Costs of such arbitration shall be paid equally by both parties.

BU4258-1
(Ed. 2-88)

## *Coverage A — Business Property*

### Water Damage Endorsement

1. The following is added to Losses Covered Under Coverage A:

   This policy is extended to cover losses caused by or resulting from:

   a. Surface water (but not including flood; waves; tidal water or tidal wave; or overflow of streams or other bodies of water);

   b. Water which backs up through sewers or drains; or

   c. Rain or snow entering building(s) through openings in the roof or walls.

2. The Deductible section under Coverage A is amended to include the following:

   **Water Damage**

   The amount of the deductible shown in the Declarations or $1,000, whichever is greater, will be deducted from each adjusted loss caused by or resulting from a peril covered under the Water Damage Endorsement.

BU5559-2
(Ed. 1-83)

## Coverage A - Standard Fire Policy Provisions

### (California)

This form contains the provisions of the Standard Fire Policy. Whenever the conditions of this form can be construed to perform a liberalization of conditions found elsewhere in Coverage A relating to insurance against loss or damage by fire, lightning or removal from premises endangered by fire or lightning, the terms and conditions of the Standard Fire Policy shall apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF THE PREHHUM SPECIFIED IN THE DECLARATIONS (or specified in endorsement attached thereto), the Company for the term SHOWN IN THE DECLARATIONS FROM INCEPTION DATE SHOWN IN THE DECLARATIONS (At 12:01 a.m. Standard Time) UNTIL CANCELLED OR EXPIRATION (At 12:01 a.m. Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified, does insure THE INSURED NAMED IN THE DECLARATIONS and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of the Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

It is agreed that the second sentence in the "Cancellation of policy" provision on Page F2 of this policy is deleted and the following sentence is substituted therefor:

"This policy may be cancelled by this company by written notice mailed or delivered to the named insured at the address shown in the policy, with or without tender of the excess of paid premiums above the pro rata premiums for the expired time, stating when, not less than ten (10) days after such mailing or delivery, cancellation shall be effective."

BU5583-1
(Ed. 1-90)

## Coverage A — Business Property
## Part Ten — Broad Heating and Air Conditioning Coverage

When coverage is shown in the Declarations for Broad Coverage, we will pay for direct physical loss to your property and the property of others under your care, custody, or control; and your loss and expense resulting from the necessary interruption of business (if you have elected Business Income Coverage in this policy); from an accident occurring on your premises.

### Equipment Covered

Equipment means any of the following equipment owned or leased by you or operated under your control:

1. Any boiler;

2. Any fired vessel;

3. Any unfired vessel subject to vacuum or internal pressure other than weight of contents;

4. Any refrigerating or air conditioning system, including all vessels, coils and piping that contain refrigerant or other medium for:

   a. cooling;

   b. humidifying; or

   c. space heating;

5. Any piping and its accessory equipment, but not including:

   a. sewer piping;

   b. underground gas piping;

   c. piping forming part of a sprinkler system; or

   d. water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming part of a refrigerating or air conditioning system;

6. Any compressor; pump; engine; turbine; motor; generator; gear; gear set; fan; or blower;

7. Any transformer; or electrical distribution equipment; and

8. Any other mechanical or electrical equipment used for maintenance or service of the premises, but not used for process or manufacturing.

### Equipment Not Covered

Equipment does not include:

1. Any boiler setting;

2. Any insulating or refractory material;

3. Any equipment used for computing, data processing, communication, lighting, advertising; display, testing, experimental, research, diagnostic, therapeutic, surgical, dental or pathological purposes; nor

4. Any vehicle; elevator; escalator; conveyor; hoist; or crane.

BUS620A
(Ed. 1-88)

**Coverage A - Business Property**
**Coverage B - Business Liability**

### Amendatory Endorsement for Customizer Policies
### (California)

It is agreed that

1. The Cancellation General Condition is replaced by the following:

**Cancellation**

a. **Your Right to Cancel**

You may cancel this policy by sending us written notice stating at what future date you wish coverage to stop.

b. **Our Right to Cancel**

1. If this policy has been in effect for less than sixty (60) days, we may cancel this policy by mailing or delivering written notice at least fifteen (15) days before the effective date of cancellation.

2. If this policy has been in effect for sixty (60) days or more or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium, including payment due on a prior policy issued by us and due during the current policy term covering the same risks;

   b. A judgment by a court or an administrative tribunal that you have violated any law of California or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

   c. Discovery of fraud or material misrepresentation by either of the following:

      (1) Persons insured or their representative in obtaining the insurance;

      (2) You or your representative in pursuing a claim under the policy.

   d. Discovery of you or your representative's willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, which materially increases any of the risks insured against;

   e. Your or your representative's failure to implement reasonable loss control requirements which you agreed to as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

   f. A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency. A certification made under penalty of perjury to the commissioner by one of our officers of the loss of, or change in, reinsurance and that the loss or change will threaten our financial integrity or solvency if the cancellation of the policy is not permitted shall constitute such a determination unless disapproved by the commissioner within thirty (30) days of the filing;

   g. A determination by the commissioner that a continuation of the policy coverage would place us in violation of the laws of California or the state of our domicile or that the continuation of coverage would threaten our solvency;

   h. A change by you or your representative in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the

BU5651-6
(Ed. 3-98)

## Coverage B - Business Liability

### Amendatory Endorsement - Asbestos Exclusion

Your Customizer Policy is amended as follows:

Under Coverage B - Business Liability, "Exclusions - Liabilities We Do Not Cover," the following exclusion is added:

Any liability arising out of:

a.    Bodily injury, property damage, personal injury or advertising injury which in whole or in part involves asbestos; or

b.    Any obligation of any insured to indemnify or contribute with another person, corporation or other entity for damages arising out of bodily injury, property damage, personal injury or advertising injury which in whole or in part involves asbestos.

BU5754
(Ed. 3-97)

## WITNESS CLAUSE

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by two officers of the Company at Northbrook, Illinois.

*Richard J. Cohen*                                    *Robert W. Pike*

President                                    Secretary

**Coverage A - Business Property**

## Collapse Endorsement

Coverage A, Collapse ---- Parts One and Two is replaced by the following:

**Collapse ---- Parts One and Two**

With respect to buildings:

a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, leaning, settling, shrinkage or expansion.

We will pay for direct physical loss or damage to covered property caused by collapse of a building or any part of a building that is insured under this policy, if the collapse is caused by one or more of the following:

1. Fire, lightening, windstorm, hail, explosion, smoke, aircraft, vehicles, riot, civil commotion, vandalism or malicious mischief, breakage of glass, falling objects, weight of snow, ice or sleet, water damage, all only as insured against in this policy. Water damage means the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam;

2. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

3. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

4. Weight of people or personal property;

5. Weight of rain that collects on a roof;

6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction or renovation is complete and is caused in part by a cause of loss listed in 1through 5 above we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

# CUSTOMIZER

# Business Insurance Policy

## Special Form

**Allstate**®

BU5550A

**Allstate°**    A Stock Company    •    Home Office    •    Northbrook, Illinois

The Company named in the Declarations herein called Allstate, we, us, ours or the Company

Table of Contents—Subject    Pages



## *Coverage A — Business Property*

Part One — Building (s)............................................................................1
  Property Covered ............................................................................1
  Property Insurance Adjustment (PIA) .......................................1
Part Two — Business Contents................................................................2
  Property Covered............................................................................2
Money And Securities.............................................................................2
Collapse......................................................................................................3
Debris Removal........................................................................................4
Property We Do Not Cover ...................................................................4
Additional Protection ............................................................................5
Losses Covered Under Coverage A ....................................................10
Losses We do Not Cover.......................................................................10
Optional Coverages:
  Part Three — Loss of Income-Rents .......................................15
  Part Four — All Exterior Glass ...............................................16
  Part Five — All Exterior Signs.................................................16
  Part Six — Employee Dishonesty.............................................16
Deductibles.............................................................................................18
Coverage A — Conditions....................................................................19
  How We Settle a Loss, Insurable Interest and Our Liability, Our
  Options, Abandoned Property, Permission Granted to You, Loss
  Clause, Our Payment of Loss, Appraisal, Mortgagee, Glass
  Replacement, No Benefit to Bailee, Other Insurance, Loss Payable
  Clause, Property of Others, Impairment of Recovery, Effects of
  Events You Cannot Control, General Average and Salvage Charges



## *Coverage B — Business Liability*

Part One — Comprehensive Liability....................................................24
  Liabilities Covered.......................................................................24
  Limits of Liability .......................................................................24
  Defense ..........................................................................................25
  Persons Insured ............................................................................25
  Exclusions — Liabilities We Do Not Cover............................26
Part Two — Medical Payments ............................................................32
  Exclusions — Expenses We Will Not Pay for .........................32
Optional Covered ..................................................................................34
  Part Three — Employer's Non-Ownership Automobile Liability ..........34
Coverage B — Condition......................................................................36
  Other Insurance............................................................................36
Coverage B — Exclusions ....................................................................36
  Nuclear Energy Liability............................................................36
  War ................................................................................................37

# *Coverage A — Business Property*



## *Part One — Buildings*

### Property Covered — Buildings

This policy covers the replacement cost (or the actual cash value, if such is indicated in the Declarations) of the building(s) for which a description and limit of liability is shown in the Declarations. This coverage includes the following items when on the same premises:

1. Permanent fixtures, machinery and equipment such as heating and air conditioning and elevators used to provide building services.

2. Additions and extensions to the described building. We also cover garages, storage sheds and swimming pools used in connection with your business.

3. Yard fixtures such as fences, lamp posts and flag poles.

4. Construction materials and supplies that you intend to use to alter, repair or expand an insured building.

5. Personal property you own and use to service or maintain the building, including fire extinguishing equipment, outdoor furniture, floor coverings, and appliances for refrigerating, ventilating, cooking, dishwashing and laundering.

6. Personal property in apartments or rooms you furnish as landlord.

7. Accounts receivable are covered when the insured building is an apartment or condominium.

8. Outdoor trees, shrubs or plants on the premises for not more than $1,000 on any one item, including cost of removal, or a total amount not exceeding $5,000 in any one loss for each insured location.

9. Building Glass.

### Property Insurance Adjustment

When the Declarations indicate that the Property Insurance Adjustment Condition applies, the limits of liability for Coverage A, Part One — Buildings, will be increased in proportion to the increase in replacement costs between the time the existing limits were established and the date of loss or damage, but not to exceed 10 percent. These limits will be derived from the Building Cost Percentage Change Factors as published by American Appraisal Company, Inc.

The limits of liability will not be reduced to less than the limits of liability specified in the Declarations at the time of policy issuance without your consent.

Any adjustment in premium resulting from the application of this condition will be made on the basis of premium rates in use by us at the time a change in limits is

Page 1

# *Coverage A — Business Property*

b.  A night depository safe on a bank's premises.

2.  Losses Outside Your Premises

We will pay up to $2,000 for loss of or damage to money or securities outside your premises while being carried by you, one of your partners or any of your employees authorized to have the money and securities or while in the living quarters of your home or the home of one of your partners or any employee authorized to have the money or securities.

# *Collapse — Parts One and Two*

We will pay for risk of direct physical loss involving collapse of a covered building or any part of a covered building caused only by one or more of the following:

a.  fire; lightening; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism or malicious mischief; breakage of glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this policy;

b.  hidden decay;

c.  hidden insect or vermin damage;

d.  weight of people or personal property;

e.  weight of rain which collects on a roof;

f.  use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

We will not be liable for loss to the following types of property, if otherwise covered in this policy, under items b, c, d, e and f unless the loss is a direct result of the collapse of a covered building:

outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

This coverage does not increase the amount(s) of insurance provided in this policy.

## *Coverage A — Business Property*

**9.** Apartment and condominium garages and storage sheds, except for coverage afforded under Additional Protection for Apartment and Condominium Outbuildings. Additional coverage may be provided if specifically shown in the Declarations.

**10.** Land (including land on which property is located) and water.



## *Additional Protection*

In addition to the coverage under Parts One and Two, this policy also gives you the following protection for losses covered under Coverage A:

**1.   Off Premises**

When coverage is provided under Part One, we will pay up to 10 percent, but not to exceed $10,000, of the sum of the Building limits for personal property while temporarily removed from your premises for the purposes of cleaning, repairing, reconstruction or restoration. When coverage is provided under Part Two, we will pay up to 10 percent, but not to exceed $10,000, of the sum of the Business Contents limits to cover such property temporarily at premises not described in the Declarations. This coverage will cease sixty days from the date you begin using such other premises.

This protection does not cover:
a.   Salesmen's samples or property at fairs, exhibitions or displays,
b.   Property you rent or lease to others or that is on someone else's premises for or during construction or installation,
c.   Property in transit or newly-acquired property.
d.   Property not used for your business occupancy.

**2.   Property in Transit**

When coverage is provided under Part Two, we will cover your business contents while in due course of transit, for the purpose of pickup and delivery, on vehicles owned by, rented to or controlled by you.

We will also cover the following losses: Flood, earthquake and landslide. We will also cover overturning, stranding, sinking, burning or derailing of a vehicle being used for transportation. We will cover losses caused by theft, provided the property was in a locked area or compartment of the vehicle and there are visible marks of entry.

We will pay up to a total of $10,000 on any one loss in any one vehicle, subject to the following limits:

a.   $2,500 on business contents owned by you;

# *Coverage A — Business Property*

7. **Fire Extinguisher Recharge**

   We will pay up to $1,000 for the cost of recharging your Underwriters Laboratories listed or Factory Mutual-approved fire extinguishers after being used in fighting a fire on your premises or on adjoining premises.

8. **Fire Department Charges**

   We will pay up to $10,000 for fire department charges providing you have contracted for this service prior to a loss or when you call the fire department because of a fire at or adjacent to your premises. We will not pay for these charges if your property is located within the limits of the city, municipality or fire protection district which normally is responsible for this service.

9. **Apartment and Condominium Outbuildings**

   We will pay up to $25,000 in any one loss to cover all outbuildings, other than residential buildings, provided that such buildings are appurtenant to the described premises and are not used for or in connection with mercantile or manufacturing operations.

10. **Exterior Signs**

    We will pay up to $2,000 to cover Exterior Signs owned or leased by you from loss directly resulting from any external cause. We will not pay for loss resulting from war, government seizure, nuclear damages, wear and tear, latent defect, corrosion or rust.

11. **Business Contents in Vehicles**

    When coverage is provided under Part Two, we will pay up to $2,500 for your Business Contents while in a vehicle that you own, rent or control while away from the described premises. We will cover losses caused by theft, provided the property was in a locked area or compartment of the vehicle and there are visible marks of entry.

12. **Business Computer Breakdown**

    a.  When coverage is provided under Coverage A, Part Two — Business Contents, we will pay up to $10,000 for loss or damage to the following:

        (1) Business computer equipment that:

            (a) you own;

            (b) you lease from others; or

            (c) is under your control;

        (2) Active data processing media which is:

Page 7

# *Coverage A — Business Property*

    (5) Any data processing media which cannot be replaced with other data processing media of like kind and quality.

   e.   Definitions applicable to this Additional Protection:

    **"Business computer equipment"** means data processing equipment and computer parts.

    **"Active data processing media"** means all forms of converted data and/or instruction vehicles you use in your data processing operations.

    Active data processing media does not mean accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts or other documents that are not in data processing media form.

### 13. Computer Virus

If during the policy period you suffer direct loss or damage resulting from computer viruses, we will pay:

   **a.**   Your expense to extract the computer viruses from covered property;

   **b.**   Your cost to repair or replace covered property;

   **c.**   Necessary expenses to help you maintain normal business operations that are over and above your normal operating costs and which are directly related to your loss; and

   **d.**   Your loss resulting from the necessary interruption of your business (if you have elected Loss of Income-Rents in this policy).

The most we will pay for loss or damage under this protection is $25,000. This additional protection is the only portion of this policy that provides coverage for a computer virus loss regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**"Computer viruses"** means unauthorized intrusive codes or programming that are entered into your computer system and interrupt your data processing operation or cause damage to your covered property.

Payment under this additional protection will not increase the applicable limit of insurance.

### 14. Pollutant Clean Up and Removal

We will pay your expense to extract pollutants from land or water at the described premises if the release, discharge or dispersal of the pollutants is occasioned by loss caused by any of the perils insured against in this policy during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

Page 9

# *Coverage A — Business Property*

c.  Earth Movement — Water

We do not cover any loss, except to property in transit, that is caused by any of the following:

i.  Earth movement (other than sinkhole collapse), including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting.

ii.  Volcanic eruption. Volcanic eruption means the eruption, explosion or effusion of a volcano.

iii.  Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray, even if driven by wind.

iv.  Water which backs up through sewers or drains.

v.  Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows, or any other openings in such sidewalks, driveways, foundations, walls or floors;

However, if a fire or explosion results from any of the perils listed in this paragraph, we will pay only for the damage directly caused by the fire or explosion.

d.  Nuclear

We do not cover any loss or damage caused directly, indirectly, contributed to or aggravated by nuclear reaction, nuclear radiation or radioactive contamination whether controlled or uncontrolled. These causes of loss are not to be considered fire, smoke, explosion or any other insured peril. We will cover direct loss by fire resulting from nuclear reaction, nuclear radiation or radioactive contamination if the loss would otherwise be covered under Coverage A.

e.  War and Government Seizure

We do not cover any loss, damage or injury caused by war (declared or undeclared), invasion, insurrection, rebellion, revolution, civil war, seizure of power or anything done to hinder or defend against these actions.

We do not cover seizure or destruction of your property under quarantine or customs, regulations or confiscation by any government or public authority. Illegal transportation or trade is not covered. Any subsequent loss which would otherwise be covered under Coverage A is not covered.

# *Coverage A — Business Property*

    iv.  Rust, mold, rot, contamination, temperature changes or extremes, or the wetness or dryness of the air.

    v.  Smog or smoke from agricultural smudging or industrial operations.

    vi.  Birds, insects, rodents or other animals.

However, if one of these causes of damage then causes a fire, smoke (except from agricultural smudging or industrial operations), an explosion, glass breakage, or water damage covered by this policy, we will cover losses caused directly by the fire, smoke, explosion, glass breakage or water.

e.  Settling

We do not cover losses caused by the settling, shrinking, cracking or expansion of swimming pools, foundations, walls, floors, roofs or ceilings.

f.  Explosions of Steam Boilers and Other Steam Equipment

We do not cover any losses caused by the explosion of steam boilers, steam pipes, steam turbines or steam engines that you own, lease, or which are operated under your control. However, we will cover losses caused directly by the explosion of gases or unburned fuel in the firebox or combustion chamber, or in flues which lead gases away from the combustion chamber.

If a fire or another explosion outside the steam equipment results from the original explosion, we will cover losses directly caused by the fire or resulting explosion.

g.  Other Problems Inside Steam Boilers and Other Steam Equipment

We do not cover damage to steam boilers, steam pipes, steam turbines or steam engines caused by any condition or any condition occurring inside the equipment. However, we will cover damage caused directly by the explosion of gases or unburned fuel in the firebox or combustion chamber, or in flues which lead gases away from the combustion chamber.

h.  Problems Inside Water Heating Equipment

We do not cover damage to hot water boilers or other water-heating equipment caused by any condition or any condition occurring inside the equipment. However, we will cover damage caused by an explosion of that equipment.

i.  Errors or Omissions

Loss due to bookkeeping, accounting or billing errors or omissions.

Page 13

# *Coverage A — Business Property*

   c.  Faulty, inadequate or defective:

      i.   planning, zoning, development, surveying, siting;

      ii.  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      iii.  materials used in repair, construction, renovation or remodeling; or

      iv.  maintenance;

of part or all of any property whether on or off the described premises.



# *Optional Coverages*

The following Optional Coverages are subject to the agreements and conditions applicable to Coverage A — Business Property, except as otherwise provided.

## Part Three — Loss of Income-Rents

When coverage is shown in the Declarations for Loss of Income, we will pay up to 12 consecutive months from the time of loss for:

1.  Your loss of income resulting from a covered loss but not to exceed the actual reduction in net income from the operation of the business plus charges and expenses which necessarily continue during the interruption of business. In determining your loss, we will consider the normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss. We will not pay for more than your actual loss of net income for the shortest time required to repair or replace your property with the exercise of due diligence and dispatch.

2.  Your loss of rental income resulting from a covered loss of that part of the insured premises you have rented to others less charges and expenses which do not continue. We will only pay your actual loss of net rental income for the shortest time required to repair or replace your property with the exercise of due diligence and dispatch.

3.  Your loss of net income or net rental income, after reopening or resumption of your business, for an additional 60 consecutive days to return your business to the income position which would have existed had no loss occurred.

4.  The reasonable and necessary loss of net income or net rental income for up to two weeks should civil authorities prohibit you from occupying the insured premises due to a loss at the immediately adjacent premises, caused by a peril we insure you against.

## *Coverage A — Business Property*

We do not cover any loss:

1. Due to any fraudulent, dishonest or criminal act by you, by any of your partners or joint venturers, whether acting alone or in collusion with others.

2. When proof, either as to its factual existence or its amount, is dependent upon an inventory computation, or a profit-and-loss computation. However, this exclusion will not apply to loss which you can prove through evidence wholly apart from such computations.

3. To any mysterious or unexplained disappearance or shortage of money, securities and other personal property.

Valuation

The limit of our liability for loss will not exceed the replacement cost at the time of loss. At your option, payment of the cost of replacing securities may be determined by the market closing price as of the date of settlement of the loss.

Conditions

1. Dishonest or fraudulent acts or a series of similar or related acts of any employee acting alone or in collusion with others during the policy period will be deemed to be one loss for the purpose of applying the deductible and the limit of liability.

2. If more than one insured is covered under this policy, our liability will not exceed the amount for which we would be liable if there was only one insured.

3. Regardless of the number of years this policy will continue in force, the limit of liability shown in the Declarations will not be cumulative from year to year.

4. Once you or one of your partners or officers discovers that an employee(s) has committed a dishonest or fraudulent act, your coverage for future acts by that employee(s) will end.

Definition

"Employee" means:

a. Any natural person:

   (1) While in your service (and for 30 days after termination of service); and

   (2) Whom you compensate directly by salary, wages or commissions; and

   (3) Whom you have the right to direct and control while performing services for you.

Page 17

# *Coverage A — Business Property*

1. An amount of $100 will be deducted from each adjusted loss to exterior glass or exterior signs.

2. An amount of $250 will be deducted from each adjusted loss under Employee Dishonesty.

3. No deductible applies to coverage provided for Loss of Income.

4. This deductible section does not apply to optional coverages or endorsements which contain their own deductible provisions.

 # *Coverage A — Conditions*

1. How We Settle a Loss

   a. Replacement Cost
      When the Declarations indicate that coverage is written on a replacement cost basis, there will be no deduction for depreciation. With the exception of loss to Tenant's Improvements and Betterments, Accounts Receivable, Valuable Papers and Records, and Property of Others, payment will not exceed the least of the following amounts:

      i. The replacement cost of any part of the property damaged with equivalent material; or
      ii. The amount actually and necessarily spent to repair or replace the damaged property; or
      iii. The limit of liability applying to the property.

   We will not pay more than the actual cash value of the damage until the repair or replacement is completed. If you decide not to repair or replace the damaged property, settlement will be on an actual cash value basis, not to exceed the limit of liability applying to the property. You may make further claim for any additional replacement cost payment provided we are notified in writing within 180 days after loss of your intent to make such further claim.

   b. Actual Cash Value
      When the Declarations indicate coverage is written on an actual cash value basis, we may make a deduction for depreciation. The actual cash value will be determined at the time of loss. Payment will not exceed the least of the following amounts:

      i. Actual cash value; or
      ii. The amount to repair or replace the damaged property with that of like kind and quality; or
      iii. The limit of liability applying to the property.

Page 19

## *Coverage A — Business Property*

**3. Our Options**

In the event of loss, we have the option of taking all or part of the covered property at the agreed or appraised value. We have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time. We must give you notice of our intention within 30 days after we receive your signed, sworn proof of loss.

**4. Abandoned Property**

We are not obligated to accept any property abandoned by an insured.

**5. Permission Granted to You**

a. The insured premises may be unoccupied without limit of time, but we will not be liable for loss occurring while the insured premises is vacant beyond a period for 60 consecutive days.

b. You may make alterations, additions, repairs and complete structures under construction.

**6. Loss Clause**

Any loss you may have will not reduce the amount of this insurance.

**7. Our Payment of Loss**

We will settle any covered loss with you. We will pay you within 60 days after the amount of loss is finally determined and you have provided us with a proof of loss. This amount may be determined by an agreement, between you and us, a court judgment or an appraisal award.

**8. Appraisal**

If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Each party will select a competent and disinterested appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the insured premises is located to select an umpire.

The appraisers will then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.

Each party will pay the appraiser it chooses and equally bear expenses for the umpire and all other expenses of the appraisal.

Page 21

## *Coverage A — Business Property*

of this policy. Losses will be adjusted with and payable to you and the loss payee named in the Declarations. If there is no loss payee named in the Declarations, losses will be adjusted with and payable to you, except as provided in Condition 14, Property of Others.

**14.** Property of Others

In the event of a covered loss to property of others held by you, for which claim is made, any loss payment will be at your option. If you request us to pay for loss or damage to property of others held by you, the right to adjust such loss or damage with the owner or owners of the property is reserved to us. The receipt of payment by such owner or owners will be full satisfaction of your claim for which such payment has been made.

**15.** Impairment of Recovery

We will not pay any loss if you have impaired any right of recovery for loss to the insured property. However, it is agreed that while covered property is on your premises, you have permission to release others in writing from liability for loss prior to loss, and this release will not affect your rights to recover.

**16.** Effect of Events You Cannot Control

The following events will not effect your coverage:

a. Anything the owner of a building does or fails to do, as long as the owner is not you or someone under your control.
b. Anything the occupant of a building does or fails to do, as long as you are not the occupant or the occupant is not under your control.
c. Your failure to comply with any requirement of any amendment to this policy, as long as that requirement concerns a part of your premises over which you have no control.

**17.** General Average and Salvage Charges

If transportation coverage is provided under this policy, we will pay general average and salvage charges for which you become legally liable.

# *Coverage B — Business Liability*

Products and Completed Work

The limit of liability shown in the Declaration for each accidental event is the maximum amount we will pay for all covered accidental events occurring within this policy period arising out of products and completed work.

Advertising Injury Liability

The maximum amount we will pay for all covered advertising injury occurring within this policy period will be $100,000.

## Defense

We will defend any suit brought against persons insured seeking damages to which this Part applies, even if the allegations in the suit are groundless, false or fraudulent. We will not defend a suit or pay any claim after the limits shown in the Declarations have been used up by paying judgments or settlements. We have the right to investigate, negotiate and settle any suit or claim if that seems proper in our judgment.

We will pay the following costs or expenses in addition to the limits of liability:

1.  Costs of defending any suit, including interest on any judgment. Our duty to pay interest ends when we pay, tender or deposit in court that part of the judgment which does not exceed the limit of liability.

2.  Premiums on appeal bonds or on attachment bonds to release property that is being used to secure a legal obligation. However, the amount of the bond will not exceed the limit of liability.

3.  Reasonable costs persons insured incur at our request while helping us investigate or defend a claim or suit including earnings persons insured lose, up to $100 a day.

4.  Emergency expenses incurred by persons insured while administering first aid to someone injured in an accidental event. However, the bodily injuries must be covered under this policy.

## Persons Insured
Who Has Liability Coverages

The following people and organizations are persons insured under this Part:

1.  If you are shown in the Declarations as an individual, you and your spouse for activities related to your business.

2.  If you are shown in the Declarations as a partnership or joint venture: The partners and joint venturers as long as their liability arises out of their activities as a partner or joint venturer. We will also cover the spouse of any partner or joint venturer for activities related to your business.

# *Coverage B — Business Liability*

    i.    The preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

    ii.   Supervisory, inspection or engineering services.

c.   If the indemnitee is an architect, engineer or surveyor including his or her agents or employees when the accidental event or injury arises out of:

    i.    The preparation or approval or the failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

    ii.   The giving of or the failure to give direction or instructions by the indemnitee, his or her agents or employees, provided such giving or failure to give is the primary cause of the accidental event.

d.   For the benefit of any employee or former employee of any persons insured, arising out of that employment.

2.   Any accidental event arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft or autos that are owned, used, rented or borrowed by any persons insured or their employees or for which liability is assumed under any contract. Autos include cars, trucks, trailers and other land vehicles designed for travel on public roads, but not mobile equipment.

We will cover the parking of autos on your premises or adjacent roadways, provided the auto is not owned, rented or borrowed by any persons insured.

3.   Any accidental event arising out of the ownership, maintenance, operation or use of mobile equipment while being used in a race, a speed or demolition contest, for stunts, or in practice for such events. We will not cover accidental events caused by mobile equipment while it is being transported by an auto that is owned, operated, rented or borrowed by any persons insured.

4.   Any accidental event arising out of the operation or use of snowmobiles or trailers designed to be attached to snowmobiles.

5.   Any accidental event arising out of the ownership, maintenance, operation, use, loading or unloading of:

a.   Any watercraft owned, used, rented or borrowed by any persons insured.
b.   Any other watercraft used by anyone in the course and scope of their employment by any persons insured.

However, we will cover accidental events arising out of the ownership, maintenance, operations or use of:

a.   Watercraft while ashore on premises you own, rent or control.
b.   Any watercraft under 26 feet in length, as long as you do not own it or it is not being used to carry people or property for a charge.

# *Coverage B — Business Liability*

    b.   Any obligation of persons insured to indemnify or contribute with another because of damages arising out of such bodily injury; or

    c.   Any bodily injury sustained by the spouse, child, parent, brother or sister of an employee of persons insured as a consequence of bodily injury to such employee arising out of and in the course of his or her employment by persons insured.

This exclusion applies to all claims and suits by any person or organization for damages because of such bodily injury including damages for care and loss of services.

This exclusion does not apply to liability assumed by persons insured under a contract or agreement that is not excluded.

9.   Any accidental event caused by the intentional disposal of radioactive isotopes or any related waste material.

10.  Any sums which persons insured become legally obligated to pay as damages arising out of the recall or withdrawal of your products from the market for any reason. We will not cover any damages resulting from the recall or withdrawal of any work you have completed or had completed for you or of any item of which your products or work forms a part.

11.  Any loss of use of tangible property that has not been physically injured when the loss of use is caused by a delay in or lack of performance by or on behalf of the persons insured of any contract or agreement or by the failure of your products or work to live up to your promises. We will cover any loss to tangible property that is caused by sudden and accidental damage or destruction of your products or work after they have been put to use by another person.

12.  Any accidental events arising out of completed work resulting from:

    a.   Operations related to transporting property, unless the accidental event results from a condition in or on the vehicle used to transport the property and the condition was created while loading or unloading the vehicle. Loading or unloading extends from the place where property is accepted for movement onto a vehicle to the place where the property is finally delivered. However, loading and unloading does not include the movement of property by a mechanical device except for hand trucks and devices attached to the vehicle.

    b.   Tools, uninstalled equipment or materials which have been abandoned or are unused.

13.  Any damage:

    a.   To property owned or occupied by or rented to persons insured, or, except with respect to the use of elevators, to property held for sale or entrusted to persons insured for storage or safekeeping. This exclusion does not

# *Coverage B — Business Liability*

18. Any personal injury or advertising injury arising out of libel or slander or the publication or utterance of defamatory or disparaging material concerning any person or organization, or goods, products or services, or in violation of an individual's right of privacy, made by or at the direction of any persons insured with knowledge that it is false.

19. Any advertising injury arising out of:

    a. Failure of performance of any contract, other than the unauthorized appropriation of ideas based upon alleged breach of an implied contract, or

    b. Infringement of any trademark, service mark or trade name, other than titles or slogans, by use on or in connection with goods, products or services sold, offered for sale or advertised, or

    c. Incorrect description of or mistake in advertised price of goods, products or services sold, offered for sale or advertised.

20. Any advertising injury as respects any persons insured in the business of advertising, broadcasting, publishing or telecasting.

21. Any accidental event, personal injury, or advertising injury, arising out of the rendering of or the failure to render scientific or professional services, or consulting business or technical services. This exclusion does not apply to Incidental Medical Malpractice Liability.

22. Anyone engaged in the business of real estate sales and/or real estate management with the exception of:

    a. That part of any premises used by persons insured for general office purposes, and

    b. Premises listed with persons insured for sale or rental, provided that such premises are not owned, operated, managed by, rented to or in the care, custody or control of persons insured, or as to which persons insured act as an agent for the collection of rents or in any supervisory capacity, unless such premises are specifically insured under Coverage A, Part One of this policy.

23. Bodily injury or personal injury arising out of any:

    a. Refusal to employ;

    b. Termination of employment;

    c. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

    d. Consequential bodily injury or personal injury as a result of a through c above.

    This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

Page 31

# *Coverage B — Business Liability*

However, we will cover medical expenses for bodily injury arising out of the ownership, maintenance, operations or use of:

Watercraft while ashore on premises you own, rent or control.

2.  Medical expenses for bodily injuries arising out of:

    a.  Your Completed Work or Products.
    b.  Operations under any of the services provided under the Cosmetologist Liability endorsement.

3.  Medical expenses which are not a direct result of a covered accidental event.

4.  Medical expenses for anyone, except as provided under 5 below, who is engaged in maintaining or repairing your premises, or in any alteration, demolition or new construction at your premises.

5.  Medical expenses for bodily injury that arises from the operations of an independent contractor who is doing work on your behalf. However, we will cover medical expenses for bodily injury arising out of the operations of an independent contractor if, at the time of the accident, the contractor was:

    a.  Maintaining or repairing your premises; or
    b.  Making structural alterations to your premises which did not involve changing the size of or moving any building or structure.

6.  Medical expenses for bodily injury to persons insured.

7.  Medical expenses for bodily injury to:

    a.  Tenants or other persons who regularly reside on your premises if the bodily injury occurs on that part of the premises that they normally occupy.
    b.  Employee(s) of tenants, if the bodily injury arises out of and in the course and scope of their employment.

8.  Medical expenses for anyone if their injuries are covered under any workers' compensation, unemployment compensation, disability benefits or similar law.

9.  Medical expenses for services which are provided by you, your employees or anyone under contract to you to provide medical services.

## Additional Definition
When used in reference to this Part:

"Medical Expenses" means expenses for necessary medical, surgical, x-ray and dental services. "Medical expenses" includes prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.

Page 33

# *Coverage B — Business Liability*

**Persons Insured**

Each of the following is a person insured under this Part:

1. You;

2. Any partner or executive officer of yours.

None of the following is a person insured:

1. Any person engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

2. Any partner or executive officer with respect to an automobile owned by such partner or officer or a member of his household.

**Exclusions**

We do not cover:

1. Any liability assumed by persons insured under any contract or agreement;

2. Any obligations that persons insured or their insurance companies have under workers' compensation, unemployment compensation, disability benefits or similar laws;

3. Any bodily injury to employees arising out of and in the course and scope of their employment or any obligation to indemnify another because of damages arising out of that injury; but this exclusion does not apply to any injury arising out of and in the course and scope of domestic employment unless benefits are in whole or in part either payable or required to be provided under any workers' compensation law;

4. Any property damage to:

   a. Property owned or being transported by persons insured, or
   b. Property rented to or in the care, custody or control of persons insured, or to which persons insured are for any purpose exercising physical control, other than a residence or private garage damaged by a private passenger automobile covered by this Part;

5. Any accidental events arising out of a non-owned automobile used in the conduct of any partnership or joint venture of which you are a partner or joint venturer and which is not shown in the Declarations as the Insured, of if you are a partnership, an automobile owned by or registered in the name of a partner.

6. Any accidental event arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land,

# *Coverage B — Business Liability*

- c. The nuclear material is contained in spent fuel or waste that persons insured or others acting for them, have at any time possessed, handled, used, processed, stored, transported or disposed of.

We will not cover any loss for property damage to a nuclear facility or any property at the facility located in the United States or Canada when the liability arises out of services or materials you furnished to the facility. This includes liability for all forms of radioactive contamination. And we will not cover any loss that arises out of services or materials you furnish to any nuclear facility located outside the United States or Canada.

## 2. War

We will not cover accidental events or medical expenses due to war whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the above.

# *General*

4. Assignment and Transfers

   Neither you nor anyone else can assign or turn over your interest under the policy without our written consent.

   However, if you die, your interest will be transferred to your legal representative and he or she will be covered while acting within the scope of his or her duties as such until the end of the policy period. Until a legal representative is appointed, the person who has temporary custody of your insured property will be covered.

5. Cancellation

   a. Your Right to Cancel

      You may cancel this policy by sending us written notice stating at what future date you wish coverage to stop.

   .b. Our Right to Cancel

      We may cancel this policy by mailing written notice to you at the mailing address shown in the Declarations. The cancellation will not take effect until at least 10 days after we mail it if the cancellation is for nonpayment of premium or 30 days if for other reasons.

      Mailing the notice will be proof of notice, and the effective date and hour stated in the notice will be the end of the policy period.

   Your return premium, if any, will be on a pro rata basis and refunded at the time of cancellation or as soon as practical. However, payment of unearned premium is not a condition of cancellation.

6. Concealment and Fraud

   This policy is void if you intentionally conceal or misrepresent any material facts or circumstances, before or after loss.

7. How State Law Affects This Policy.

   Any part of this policy that conflicts with state law is automatically changed to conform to the law.

8. Losses Covered Under Different Parts of This Policy.

   Even if more than one coverage under this policy applies to the same loss, we will not pay more than the actual loss.

# *General*

a. Promptly notify us or one of our agents of what happened. You must also furnish us the necessary information regarding the time and place of the event and the names and addresses of any witnesses and injured people.
b. Notify the policy if a law may have been broken.
c. Send us copies of all legal documents if any persons insured are sued, or someone files a claim against any persons insured.
d. Cooperate and assist us in securing and giving evidence, attending hearings and trials and obtaining the attendance of witnesses.
e. Refrain from taking on any financial obligations or paying out any money, without our authorization. If you do, we may not reimburse you, even if the cost is covered by this policy. This rule does not apply to money spent for emergency first aid to others at the time of an accident.

12. Legal Action Against Us

Persons insured agree not to take any legal action against us in connection with your policy unless you have first complied with all of its terms. Persons insured also agree to bring any action against us that relates to Coverage A within one year after a loss occurs.

In addition, if persons insured have a loss under Coverage B, including . medical payments, they agree not to bring any legal action against us until the amount for which they are liable has been finally determined. This amount can be finally determined by a judgment against them after an actual trial or by a written agreement between the person insured, us and the claimant. Any person or organization who has obtained a judgment or written agreement against persons insured will be entitled to recover under this policy, up to the applicable limit of coverage. This policy does not give anyone the right to join us as a party in any action against any persons insured. In addition, neither persons insured nor their legal representatives can implead us in any legal action that is taken against them.

13. Bankruptcy or Insolvency

If you, your estate, any persons insured or their estates become bankrupt or insolvent, we will still meet all our obligations under this policy.



# *Definitions*

When used in this policy:

**"Accidental event"** means an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage. An accident cannot be intended or expected by any persons insured, except for the use of reasonable force to protect persons or property.

**"Advertising"** means the action of calling something to the attention of the public by means of printed or broadcast paid announcements for the sale of goods, products or services.

Page 41

# *General*

"**Declarations**" means the page which shows your name, mailing address, the policy period, coverages, location of your premises, premiums and limits of liability. This policy is not complete without the Declarations.

"**Elevator**" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery. An "elevator" does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

"**Mobile equipment**" means a land vehicle whether or not self-propelled which meets any one of the following qualifications.

1. It is not subject to motor vehicle registration; or

2. It is maintained for use solely on premises (including the ways immediately adjoining) which you own or which is rented to you; or

3. It is designed for use principally off public roads; or

4. It is designed or maintained for the sole purpose of affording mobility. This equipment must form an integral part of, or be permanently attached to, the vehicle.

Any attached machinery or apparatus is considered a part of the land vehicle.

"**Money**" means currency, coins, bank notes or bullion. "Money" also includes travelers checks, registered checks and money orders which you hold for sale to the public.

"**Personal injury**" means injury, other than bodily injury, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

4. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization goods, products or services; or

5. oral or written publication of material that violates a person's right of privacy.

## *General*

processing and other records. Valuable papers and records does not mean money or securities.

"You," "your" and "yours" mean the person or organization named as the Insured in the Declarations.

"We," "us," "our" and "ours" mean the Company designated in the Declarations.

1    MICHAEL BARNES (State Bar No. 121314)
      SONIA MARTIN (State Bar No. 191148)
2    MICHELLE TRUDELLE (State Bar No. 221323)
      SONNENSCHEIN NATH & ROSENTHAL LLP
3    2121 N. California Blvd., Suite 800
      Walnut Creek, California 94596
4    Telephone: (925) 949-2600
      Facsimile: (925) 949-2610
5
      Attorneys for Defendant
6    ALLSTATE INSURANCE COMPANY

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE CITY AND COUNTY OF SAN FRANCISCO

10

11   KARSANT FAMILY LIMITED              No. CGC08-471940
      PARTNERSHIP and DR. PETER
12   KARSANT,                            ANSWER TO COMPLAINT

13            Plaintiffs,

14       vs.

15   ALLSTATE INSURANCE COMPANY,

16            Defendant.

17

18

19

20            Defendant Allstate Insurance Company ("Allstate") answers the Complaint for Breach of

21   Contract and Bad Faith of plaintiffs Karsant Family Limited Partnership and Dr. Peter Karsant

22   (the "Complaint") as follows. Unless indicated otherwise, each paragraph below corresponds

23   with the paragraph of the Complaint bearing the same number:

                                   **General Denial**
24
              Allstate generally denies each and every material allegation in plaintiffs' Complaint
25
      pursuant to Code of Civil Procedure section 431.30(d). Allstate further denies that plaintiffs
26
      have sustained any injury, damage, or loss by reason of any conduct, action, error, or omission
27
      on the part of Allstate.
28

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAR 1 7 2008

GORDON PARK-LI, Clerk
BY:
Deputy Clerk

-1-

1    This answer is filed without prejudice to Allstate's right to file an amended answer or

2  other response, including a Cross-Complaint, after conducting discovery.

3  ## **AFFIRMATIVE DEFENSES**

4  (Applicable To All Causes of Action)

5  ### **First Defense**

6  ### **(Statute of Limitations)**

7    The Complaint is barred by the applicable statutes of limitations, including, but not limited

8  to, California Code of Civil Procedure sections 335.1, 337(1), 338, 339 340 and/or 343.

9  ### **Second Defense**

10  ### **(Ripeness/ Justiciability/ Actual Controversy)**

11    The Complaint, and each and every purported cause of action, fails to set forth an actual

12  controversy to the extent that it is not ripe for adjudication and/or seeks an advisory ruling on

13  hypothetical grounds.

14  ### **Third Defense**

15  ### **(Set-Off Under Buss)**

16    To the extent Allstate is liable to plaintiffs, if at all, Allstate is entitled to a set-off, pursuant

17  to Buss v. Superior Court 16 Cal.4th 35 (1977), for amounts paid to plaintiffs that were not

18  owed.

19  ### **Fourth Defense**

20  ### **(Insurance Code Section 533)**

21    Public policy as expressed in Insurance Code section 533 bars indemnification for the

22  underlying claims against plaintiffs, in whole or in part.

23  ### **Fifth Defense**

24  ### **(Speculative Nature of Damages)**

25    Plaintiffs are  not entitled to judgment to the extent their damages claims are speculative

26  / / /

27  / / /

28  / / /

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

### Sixth Defense

### (Failure to State a Cause of Action)

The Complaint, and each and every purported cause of action therein, fails to state facts sufficient to constitute a cause of action against Allstate.

### Seventh Defense

### (Absence of Fault by Allstate)

Plaintiffs have not been injured or damaged in any way or in any manner as a result of any alleged act, conduct or omission of Allstate.

### Eighth Defense

### (Good Faith of Allstate)

Allstate's conduct was at all times reasonable and in good faith, not tortious.

### Ninth Defense

### (Plaintiffs' Claim Raised Genuine Issues)

Plaintiffs should take nothing pursuant to the Complaint because their claims to Allstate raised genuine issues and/or disputes as to Allstate's duties, if any, under the Allstate Business Insurance Policy at issue in the Complaint (the "Policy"), and Allstate's belief in the validity of these issues and/or disputes was reasonable.

### Tenth Defense

### (Estoppel)

The Complaint, and each and every purported cause of action therein, is barred against Allstate by the doctrine of estoppel.

### Eleventh Defense

### (Waiver)

The Complaint, and each and every purported cause of action therein, is barred against Allstate by the doctrine of waiver.

/ / /

/ / /

/ / /

-3-

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1

2

### Twelfth Defense

### (Laches)

The Complaint, and each and every purported cause of action therein, is barred against Allstate by the doctrine of laches.

### Thirteenth Defense

### (Unclean Hands)

The Complaint, and each and every purported cause of action therein, is barred against Allstate by the doctrine of unclean hands.

### Fourteenth Defense

### (No Coverage for Claimed Losses)

The Complaint, and each and every purported cause of action therein, is barred to the extent that it seeks payment, reimbursement, contribution, or indemnification for, or is based on, a loss that is not covered by, or is excluded from, coverage under the terms, exclusions, conditions and limitations of the Policy.

### Fifteenth Defense

### (Mitigation of Damages)

Plaintiffs' recovery against Allstate, if any, is barred and/or limited to the extent plaintiffs have failed to mitigate, minimize or avoid any damages they have allegedly suffered.

### Sixteenth Defense

### (No Punitive Damages)

The Complaint fails to state facts sufficient to entitle plaintiffs to punitive damages.

### Seventeenth Defense

### (Unconstitutionality of Punitive Damages)

Plaintiffs' claim for punitive damages is barred because the California punitive damage statute is unconstitutional in that it is void for vagueness, violates the equal protection clause, violates the due process clause, is an undue burden on interstate commerce, violates the contract clause, and violates the Eighth Amendment proscription against excessive fines pursuant to the United States and California Constitutions.

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Eighteenth Defense

### (Bad Faith of Plaintiffs)

The Complaint is barred to the extent that plaintiffs themselves have acted in bad faith.

## Nineteenth Defense

### (Failure to State Sufficient Facts)

The Complaint fails to state facts sufficient to entitle plaintiffs to tort damages.

## Twentieth Defense

### (Failure to Comply With Policy Terms)

The Complaint is barred to the extent the plaintiffs have failed to perform all of their obligations under the Policy, including their duties to cooperate with Allstate in the processing of the claims and to document and substantiate their claimed losses.

## Twenty-First Defense

### (Policy Limits)

Plaintiffs' Policy is subject to certain deductibles and coverage limits. Even if the Policy provided coverage for the alleged loss, that coverage would be subject to the Policy's deductibles and coverage limits.

## Twenty-Second Defense

### (Policy Exclusions)

The loss was excluded from coverage under the Policy, in whole or in part, by Exclusions 11, 13, 15 and 22 under Coverage B (Business Liability).

## Twenty-Third Defense

### (Set-Off)

To the extent Allstate is liable to plaintiffs, if at all, Allstate is entitled to a set-off on account of damages sustained by Allstate as a result of plaintiffs' acts, conduct or omissions.

/ / /

/ / /

/ / /

/ / /

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1

**Twenty-Fourth Defense**

2

**(Arbitration of Independent Counsel Fees)**

3

Civil Code section 2860 obligated plaintiffs to submit any dispute concerning

4

independent counsel fees to final and binding arbitration, and this Court lacks jurisdiction to

5

adjudicate such matters.

6

**Twenty-Fifth Defense**

7

**(Right to Assert Additional Defenses)**

8

Allstate reserves its right to amend its Answer to the Complaint to assert any additional

9

defenses and/or applicable terms, provisions, exclusions, limitations or conditions of the Policy,

10

as may become apparent during discovery in this action.

11

WHEREFORE, Allstate prays for judgment as follows:

12

1.    That plaintiffs take nothing by way of their Complaint and that the Complaint be

13

dismissed with prejudice;

14

2.    That judgment be entered in favor of Allstate;

15

3.    That Allstate be awarded costs and attorneys' fees incurred in this action; and

16

4.    For such other and further relief as this Court deems just and proper.

17

Dated: March $\underline{17}$, 2008            SONNENSCHEIN NATH & ROSENTHAL LLP

18

19

20

By___MATudelle___

21

MICHELLE TRUDELLE

22

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

23

27291815

24

25

26

27

28

-6-
ANSWER TO COMPLAINT

1

## PROOF OF SERVICE

2    I, Maria Saplala, hereby declare:

3    I am employed in the City and County of San Francisco, California in the office of a member

4    of the bar of this court whose direction the following service was made. I am over the age of

5    eighteen years and not a party to the within action. My business address is Sonnenschein Nath &

6    Rosenthal LLP, 525 Market Street, 26th Floor, San Francisco, California 94105.

7    On March 17, 2008, I served a copy of

8    **ANSWER TO COMPLAINT**

9    on the interested parties in this action by placing a true copy thereof, on the above date, enclosed

10   in a sealed envelope, following the ordinary business practice of Sonnenschein Nath & Rosenthal

11   LLP, as follows:

12   Dennis Cusack, Esq.
     FARELLA BRAUN + MARTEL LLP
13   235 Montgomery Street
     San Francisco, CA  94104
14

15   ☒   U.S. MAIL: I am personally and readily familiar with the business practice of Sonnenschein
         Nath & Rosenthal LLP for collection and processing of correspondence for mailing with the
16       United States Postal Service, pursuant to which mail placed for collection at designated
         stations in the ordinary course of business is deposited the same day, proper postage prepaid,
17       with the United States Postal Service.

18   ☐   FACSIMILE TRANSMISSION: I caused such document to be sent by facsimile
         transmission at the above-listed fax number for the party.
19

20   ☐   FEDERAL EXPRESS: I served the within document in a sealed Federal Express envelope
         with delivery fees provided for and deposited in a facility regularly maintained by Federal
21       Express.

22   ☐   HAND DELIVERY: I caused such document to be served by hand delivery.

23   I declare under penalty of perjury under the laws of the State of California that the

24   foregoing is true and correct, and that this declaration was executed on March 17, 2008, at

25   Walnut Creek, California.

26                                                    _____
27                                                    Maria Saplala
28

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

# Alternative Dispute Resolution (ADR)
# Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

### Superior Court of California
### County of San Francisco

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### *Description*

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.   Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

### Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
### 400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**          ☐ **Mediation Services of BASF**   ☐   **Judicial Mediation**
☐ **Binding arbitration**                                                                                  Judge _____
☐ **Non-binding judicial arbitration**                                                               Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

---

Name of Party Stipulating              Name of Party or Attorney Executing Stipulation     Signature of Party or Attorney

☐  Plaintiff     ☐  Defendant     ☐  Cross-defendant                              Dated: _____

---

Name of Party Stipulating              Name of Party or Attorney Executing Stipulation     Signature of Party or Attorney

☐  Plaintiff     ☐  Defendant     ☐  Cross-defendant                              Dated: _____

---

Name of Party Stipulating              Name of Party or Attorney Executing Stipulation     Signature of Party or Attorney

☐  Plaintiff     ☐  Defendant     ☐  Cross-defendant                              Dated: _____

☐  *Additional signature(s) attached*

**CM-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* <br><br> TELEPHONE NO.:      FAX NO. *(Optional):* <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)    ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:      Time:      Dept.:      Div.:      Room:

Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4

Cal. Rules of Court, <br> rules 3.720–3.730 <br> www.courtinfo.ca.gov

American LegalNet, Inc. <br> www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*

(1) ☐    Mediation

(2) ☐    Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐    Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐    Binding judicial arbitration

(5) ☐    Binding private arbitration

(6) ☐    Neutral case evaluation

(7) ☐    Other *(specify):*

e. ☐    This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐    Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐    This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

☐    The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

a. ☐    Insurance carrier, if any, for party filing this statement *(name):*

b.    Reservation of rights:    ☐ Yes    ☐ No

c. ☐    Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy    ☐ Other *(specify):*

Status:

**14. Related cases, consolidation, and coordination**

a. ☐    There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐    Additional cases are described in Attachment 14a.

b. ☐    A motion to    ☐ consolidate    ☐ coordinate    will be filed by *(name party):*

**15. Bifurcation**

☐    The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

☐    The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*



# Superior Court of California
## County of San Francisco

HON. DAVID BALLATI
PRESIDING JUDGE

## Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR PROGRAM ADMINISTRATOR

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

CASE NUMBER: CGC-08-1940  KARSANT FAMILY LIMITED  RTNERSHIP et al VS. ALLS'

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

**DATE:**  **JUL-11-2008**

**TIME:**  **9:00AM**

**PLACE:**  **Department 212**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order
**without an appearance** at the case management conference if the case management
statement is filed, served and lodged in Department 212
twenty-five (25) days before the case management

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
> CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
> JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
> SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
> PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
> (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint.  All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Dennis M. Cusack<br>Farella Braun + Martel LLP<br>235 Montgomery Street<br>18th Floor<br>San Francisc, CA 94104<br>TELEPHONE NO.: 415-954-4400    FAX NO. *(Optional):*  415-954-4480<br>E-MAIL ADDRESS *(Optional):*  dcusack@fbm.com<br>ATTORNEY FOR *(Name):*  Plaintiffs | ENDORSED<br>F I L E D<br>San Francisco County Superior Court<br><br>FEB  7 2008<br><br>GORDON PARK-LI, Clerk<br>BY CRISTINA E. BAUTISTA<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco | |
|---|---|
| STREET ADDRESS: 400 McAllister Street, 4th Floor | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: San Francisco, CA 94102 | |
| BRANCH NAME: San Francisco | |

| PLAINTIFF/PETITIONER: Karsant Family Limited Partnership and<br>Dr. Peter Karsant | CASE NUMBER:<br>CGC08-471940 |
|---|---|
| DEFENDANT/RESPONDENT: Allstate Insurance Company | JUDICIAL OFFICER: |

| NOTICE OF RELATED CASE | DEPT.: |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Panoutsopoulos v. Karsant, et al.
    b.  Case number: CGC 04-431368
    c.  Court:  [x] same as above
              [ ] other state or federal court *(name and address):*

    d.  Department:
    e.  Case type:  [ ] limited civil  [x] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

    f.  Filing date: May 14, 2004.
    g.  Has this case been designated or determined as "complex?"  [ ] Yes  [x] No

    h.  Relationship of this case to the case referenced above *(check all that apply):*  Insurance coverage dispute
        [x]  involves the same parties and is based on the same or similar claims. arising out of related case.
        [ ]  arises from the same or substantially identical transactions, incidents, or events requiring the determination of
             the same or substantially identical questions of law or fact.
        [ ]  involves claims against, title to, possession of, or damages to the same property.
        [ ]  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        [ ]  Additional explanation is attached in attachment 1h

    i.  Status of case:
        [x]  pending
        [ ]  dismissed  [ ] with  [ ] without prejudice
        [ ]  disposed of by judgment

2.  a.  Title:
    b.  Case number:
    c.  Court:  [ ] same as above
              [ ] other state or federal court *(name and address):*

    d.  Department:

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | NOTICE OF RELATED CASE | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rule 3.300 |
|---|---|---|---|

CM-015

| PLAINTIFF/PETITIONER: Karsant Family Limited Partnership and Dr. Peter Karsant | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Allstate Insurance Company | |

2. *(continued)*
   e. Case type:  ☐ limited civil   ☐ unlimited civil.   ☐ probate   ☐ family law   ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*
      ☐ involves the same parties and is based on the same or similar claims.
      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      ☐ involves claims against, title to, possession of, or damages to the same property.
      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         ☐ Additional explanation is attached in attachment 2h

   i. Status of case:
      ☐ pending
      ☐ dismissed   ☐ with   ☐ without prejudice
      ☐ disposed of by judgment

3. a. Title:
   b. Case number:
   c. Court:  ☐ same as above
             ☐ other state or federal court *(name and address):*

   d. Department:
   e. Case type:  ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*
      ☐ involves the same parties and is based on the same or similar claims.
      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      ☐ involves claims against, title to, possession of, or damages to the same property.
      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         ☐ Additional explanation is attached in attachment 3h

   i. Status of case:
      ☐ pending
      ☐ dismissed   ☐ with   ☐ without prejudice
      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: Feb. 7, 2008

Dennis M. Cusack
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

**CM-015**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Karsant Family Limited Partnership and Dr. Peter Karsant<br>DEFENDANT/RESPONDENT: Allstate Insurance Company | CASE NUMBER: |

### PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):* Farella Braun + Martel LLP, 235 Montgomery Street, 18th Floor, San Francisco, CA 94104

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☒ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served: G. Edward Rudloff
   Rudloff Wood & Barrows, LLP
   Street address: 2000 Powell Street, #900
   City: Emeryville
   State and zip code: CA 94608

   c. Name of person served: Nick T. Reckas
   Law Offices of Nick T. Reckas
   Street address: 336 Bon Air Center #296
   City: Greenbrae
   State and zip code: CA 94904

   b. Name of person served:

   Street address:
   City:
   State and zip code:

   d. Name of person served:

   Street address:
   City:
   State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Feb. 7, 2008

Angelica V. Dugan
(TYPE OR PRINT NAME OF DECLARANT)

▶ *Angelica V. Dugan*
(SIGNATURE OF DECLARANT)